## The Utica Bank vs. Ganson and others.

Where a note is made by a debtor, payable to a *bank* by its corporate name, for the purpose of raising money upon it at such bank to pay and satisfy a particular debt, and the debtor procures a third person to become a joint maker of the note, who signs the same "A. B., *surety*," and the bank refuse to discount the note, the creditor for whose benefit the note was made, may, with the assent of the bank, maintain an action upon it in the name of the bank against the makers, although the note was not discounted at the bank in pursuance of the original intention.

This was an action of assumpsit, tried at the Genesee circuit in April, 1831. The plaintiffs proved a note made by the defendants for $138,60, dated 27th June, 1828, payable 90 days after date to *the President, Directors and Company of the Utica Bank*, at their branch bank in Canandaigua; it was signed *James Ganson, Azor Curtis* and *Jared Rathbun as surety*. The plaintiff's counsel admitted that the *payees* of the note had no interest in it, and that the note had been offered for discount at the bank and rejected, but *offered to prove* that one Chad Brown was the beneficial holder of the note; that it was given to him to pay a debt owing to him by *Ganson* and *Curtis*, two of the defendants; that it was made and signed by the defendants *Ganson* and *Curtis*, to raise money on, at the Utica Branch Bank in Canandaigua, to pay such debt; that it was immediately offered at the bank for discount, and the discount refused; and that the suit was brought in the names of the *payees*, with their assent, for the benefit of Brown. The circuit judge decided that such proof would not be sufficient to sustain the action, unless it was further proved that *Rathbun*, the other maker of the note, knew when he signed it that it was given to pay the debt of Brown; that

a surety could not be liable beyond the scope of his undertaking ; and that the undertaking of Rathbun being *to the bank* alone, his liability depended upon the contingency of the note being discounted, especially in the absence of proof of knowledge on his part of the alleged indebtedness of Ganson and Curtis to Brown, or of any interest of the latter in the note. The plaintiffs' counsel excepted to the decision, and the jury, under the direction of the judge, found a verdict for the defendants, which the plaintiffs now moved to set aside.

NEW-YORK,<br>May, 1833.<br><br>Utica Bank<br>v.<br>Ganson.

*P. Gridley*, for the plaintiffs.

*J. C. Spencer*, for the defendants.

*By the Court*, NELSON, J. The evidence offered by the plaintiff ought to have been admitted. The admission of the fact that the note had been presented at the bank for discount and rejected, threw upon the holder the burthen of shewing that it came fairly and honestly into his possession and for a valuable consideration, in order to repel the suspicion thus cast upon his title. For this reason the evidence was not only admissible, but indispensable.

But it is said the evidence offered would have shewn a perversion of the object of the note, by the application of it to a purpose different from the original intention of the makers, and that this was known to the holder. There is no pretence for this position, so far as two of the makers, *Ganson* and *Curtis*, are concerned, and I am of opinion that even the *surety* cannot make this objection. *Rathbun* cannot be considered in any better condition than an accommodation acceptor of a bill of exchange after an unqualified acceptance. The party thus accepting, or thus signing as maker, by operation of the law merchant, engages to pay the bill or note according to its tenor and effect. It is a letter of credit in the one case to the drawer, and in the other to the co-maker, to the extent of the bill or note, without any restriction as to the design or object for which the paper is made. These are familiar principles, and will be found in all the treatises upon bills of exchange and promissory notes.

It cannot be said that the face of the note shews that it was made for a *special purpose ;* and there is no evidence of that fact *aliunde.* It is true, that looking at the note, we may infer that it was signed by Rathbun for the purpose of raising money or obtaining credit upon it for the benefit of the other makers ; but this, in contemplation of law, is the purpose of every note or bill of exchange that is put in circulation without restriction ; it is to raise money, or obtain credit for the benefit of the holder upon the security or ability of the names upon the paper. If a person accepts a bill for a particular purpose, such as to pay a particular demand, and that known to the holder, he cannot apply it to a different purpose ; but where it is given under no such restriction, though merely for the accommodation of the drawer or payee, and is sent into the world, it is no answer to an action, that it was accepted for the accommodation of the drawer, and that the fact was known to the holder ; he may notwithstanding recover, if he gave a *bona fide* consideration for it. 3 *Esp.* 46. *Chitty,* 184, 5. Applying these principles to the note in question, there cannot be a doubt but the evidence rejected was admissible, and if received, would have entitled the plaintiff to recover : because, as there was no evidence that *Rathbun* signed the note to be applied to any particular purpose, but for the general credit of his co-makers, to be inferred from the face of it, there has been no perversion of that purpose ; on the contrary, the evidence offered would have shewn its application to the original object, to wit, to pay a debt of the co-makers to the holder, for whose benefit the suit is brought. This view is not only in accordance with the general principles applicable to this species of paper, but with all the cases in this court, and is, I think, the ground upon which stands the case of the *Rutland Bank* v. *Buck,* 5 *Wendell,* 66. In that case, as in this, the note was signed by Buck, without being restricted to any particular purpose. It was a letter of credit to Spear and Everest to the amount of the face of it, and upon established principles of the law merchant, valid in the hands of any holder who came fairly to the possession of it for a *bona fide* consideration. In these cases, the holder need not shew such a consideration as is required where the note has

been wrongfully put in circulation. That class of cases stands upon different principles; they turn upon the equities of the parties.

In *Dennison* v. *T. L. Bacon and another*, 10 *Johns. R.* 198, the object of the note failed. It was given to raise money for a specified purpose, to which it had not been applied ; and one of the payees attempted to enforce the collection in violation of the agreement under which it was given.* In *Woodhull* v. *Holmes*, 10 *Johns. R.* 231, the note was drawn and endorsed, to be discounted at the bank for the benefit of the maker or endorser, and delivered to a third person to carry to the bank for that purpose. Instead of doing this, he passed it to a broker and pocketed the avails. As neither of the parties to the note received any thing on it, the object of the making the note had failed, and it was sent into the world by fraud, and the holder in such a case must shew not only a valuable con-

---

* On the argument, the counsel for the defendants relied much upon the case of *Denniston* v. *T. L. Bacon and another*, 10 *Johns. R.* 198, in support of the position, that where the terms upon which a note is given fails, the *surety* is discharged. There a note was given by *Timothy L. Bacon* and *Abner Bacon* for $1000, which it was agreed should be discounted at a bank, be paid by *instalments*, and *renewed* from time to time for the period of 168 days. The note was payable to *W. Gere* and *R. Elliot*, and when discounted, $500 was to be passed to the credit of T. L. Bacon by Elliot, and the residue was to be applied to the use of *Gere* and *A. Bacon*, one of the makers of the note. The note was offered for discount, but did not pass ; having been endorsed in blank by the payees, Elliot filled in the name of *Denniston* as endorsee, and a suit was brought in his name for the benefit of Elliot, and the court, on a case made, ordered a nonsuit to be entered. The counsel particularly called the attention of the court to the opinion in that case, where it is said, "the note was offered and rejected by the bank—the object of it failed, and it ought to have been returned to the parties who gave it," and remarked that although Elliot by the terms of the agreement was entitled to one half of the amount of the note, yet a nonsuit was entered. In answer to which the counsel for the plaintiffs here urged that the principal ground upon which the decision was made in the case of *Denniston* v. *Bacon* was, that the plaintiff sought to enforce payment of the note *according to the face*, whereas by the terms of the agreement, it was to be paid by *instalments* and on an *extended credit*, and so this decision was understood by this court in the *Bank of Chenango* v. *Hyde*, 4 *Cowen*, 573. The plaintiff, therefore, was nonsuited, not because the note had been rejected when offered for discount, but because he sought to enforce its payment in violation of the terms of payment which had been agreed upon between the parties.

sideration, but that he took the paper in the usual course of business. *3 Kent's Comm.* 84. *20 Johns. R.* 637. A consideration which would be valid between him and the person from whom he received the note, might not be sufficient in such a case against the maker. All these cases turn upon strict commercial principles, peculiar to negotiable paper, and are not to be governed by the somewhat analogous doctrine relating to the liability of sureties and guarantors simply as such. The latter are liable only upon the strictest construction of their contract, and are deemed favorites in the law. The note in question is not negotiable, but it is a note within the statute, and possesses all the properties of negotiable paper, except passing the legal title by endorsement or delivery, and the consequent inconvenience of the holder being obliged to sue in the name of the original payee.

New trial granted.