^Birchard, C. J.
The first assignment of error presents
the question, whether the agreed facts in this case are properly a. *242 ■part of the record. In the case of the Bank of Virginia v. Bank of Chillicothe, decided at this term, it was held that when .a cause was submitted to the court without the intervention of a jury to try the facts as well as determine the law, the finding of the court upon the facts can not be brought under review by writ ■of error, unless the evidence be made part of the record by bill of ■exceptions. It is urged that this case is like that, and concluded by it. A slight examination of the two cases will show a manifest ■distinction between them. In that case certain facts upon which the case turned, in the agreed statement, were left undetermined.
The agreed statement was an agreement of what the evidence was on the litigated points of the case, from which the court had to find what were the true facts before they could determine the law arising upon them. In this case all the facts were agreed upon. In this agreed statement, the facts were admitted, leaving, for the court, nothing to find, and only the naked duty of declaring the law upon the given statement of admitted facts. It was treated by the court below precisely as a •special verdict would have been treated, and bears the same relation to the record. Nothing was found by the court upon any fact, for no fact was submitted to their finding. The record, therefore, presents no issue of fact for our consideration, which is sought to be reviewed. This proceeding merely seeks the judgment of this court upon a matter of law, which we think is clearly pre■sentod. The case agreed was used and treated by the parties below as a special verdict, and was so acted upon by the court. The record shows that the parties stipulated that the facts should be taken as admitted and judgment entered thereon according to the legal rights of the parties. It is clearly distinguishable from the •case relied upon, and is not settled by it. Hence, the cause firstly assigned for error, docs not exist. Under the second assignment, questions of greater difficulty arise and upon which there is some conflict between *the decisions of our own and the courts of our sister states. These conflicting decisions have been presented and commented upon by counsel with praiseworthy industry, and an ability that does credit to the profession, while it has tended to lighten our labors in an examination of. points notwith•out difficulty.
I shall not dispose of the questions argued in the order in which -counsel have discussed them; but beginning with that last argued, *243 will examine first, whether ¥m. Neil can be held liable in this action; assuming, for present purposes, that_the suit was well brought in the name of plaintiff.
Wm. Neil was surety on this note, and the suit is in the name of a plaintiff, who is a bank. Section 4 of the act, 43 Ohio L. 67, to regulate proceedings where banks and bankers are parties, provides, that in all contracts for the payment of money to banks or bankers, sureties in fact, known to the parties to be such at the time such contracts were made, may be proved to be, and shall be considered sureties in all courts, and have all the privileges, ■and be subject to all the liabilities of sureties, anything in the contract expressed to the contrary notwithstanding.
Under this statute Neil’s rights as surety must be looked to» and whatever they may be, we are to see that he is protected in them. His claim is, that by his contract, he agreed to become bound as surety to the Clinton Bank of Columbus or its assigns, for the sum it might advance on the note to Ayres, not exceeding the amount of the note, and that be can be bound to no other person for any money advanced on the same note.
Against this position, plaintiff’s counsel have cited several decisions of the Supreme Court of New York, which are claimed to be directly in point: 1. The case of Utica Bank v. Ganson, 10 Wend. 314, was an action of assumpsit: The plaintiff proved a note made by the defendant for $138.60, dated June 27, 1828, payable ninety days after date, to the president, directors, and company of the Utica Bank. It was ^signed, James Ganson, Azor Curtis, and Jared Rathbun, as surety. The plaintiff’s counsel admitted that the payee of the note had no interest in it, and that the note had been offered at the bank and discount refused; but offered to prove that one C. B. was the beneficial holder of the same, and that it was given to him in payment of a debt owing to him by Ganson and Curtis, two of the defendants, and that it was executed by those two defendants, to raise money to pay the debt due C. B. The circuit judge below decided that such proof would not be sufficient to sustain the action, unless it was further proven that Rathbun, the other maker of the note, knew when he signed it, that it was given to pay the debt of Brown. That the undertaking of Rathbun being to the bank alone, his liability depended upon the contingency of the note being discounted. To this opinion of the court below the plaintiff’s counsel excepted; and *244 the jury, under the direction of the court, found a verdict for the defendants, which the plaintiff moved to set aside; and the opinion of the court was given by Nelson, J., the substance of which is contained in the following syllabus given by the reporter.
“Where a note is made by a debtor, payable to a bank by its corporate name, for the purpose of raising money upon it at such bank, to pay and satisfy a particular debt, and the debtor procures a third person to become a joint maker of the note, who signs himself “ A. B., surety,” and the bank refuse to discount the note, the creditor for whose benefit the note was made, may, with the assent of the bank, maintain an action upon it in the name of the bank against the makers, although the note was not discounted at the bank in pursuance of the original intention.” A new trial was granted.
It is to be observed of this case, that the note was used to effect the precise object designed by the surety. The court treated Rathbun as an accommodation acceptor of a bill of exchange, after an unqualified acceptance. But they say that if a person accept a bill for a particular purpose, such *as to pay a particular demand, and that known to the holder, he can not apply it to a different purpose. And again, on page 318, the judge, in further commenting upon the case, treats it as turning on. “ strict commercial principles, peculiar to negotiable paper, and not to be governed by the doctrine relating to the liabilities of sureties and guarantors, simply as such. Bank of Rutland v. Buck & Co., 5 Wend. 66, is substantially like this. There, the note was made to enable S. and E. to -raise money for their own accommodation; was signed by Buck, and delivered to S. and E. It was offered by them at the bank for discount; and discount refused. Afterward, S. and E. delivered it to E. H. & Co., as security for a judgment. The court held the surety liable, on the ground that it was drawn for the accommodation of S. and E., and they had had the benefit of it, and that it was immaterial to the surety who advanced the money. The case of J. & T. Powell v. Waters, 17 Johns. 177, is not a case of surety, but of the indorser of an accommodation note; yet it supports the doctrine of the cases in 5 and 10 Wend.
These cases seem to sustain the principle that is claimed by plaintiffs,. and to support the right to subject Neil to the payment of this note.
*245 In our own court, a different rule has for many years prevailed. In Stone v. Vance et al., 6 Ohio, 246, it was held that a note, made and indorsed for the accommodation of the maker, to be discounted at a bank where its discount was refused, could not be transferred,' as a business note, to one having a knowledge of the fact, and the amount recovered by the indorsee.
In that ease, the ground of the decision was, that the direction given to the note was contrary to the purpose for which the note was delivered, and that a circulation had been given to it which the parties did not design. This principle of Stone v. Vance is confirmed by Riley & Van Amringe v. Johnston, 8 Ohio, 528, although another point ruled in that case has been since overruled in Carlisle v. *Wishart, 11 Ohio, 172. More than twenty years ago, the same doctrine was held in Trumbull county, upon the circuit, and repeatedly since, in other counties. In Massachusetts, the rule is the same as in Ohio,—Adams’ Bank v. Jones & Severance, 16 Pick. 574, where it was held the suit could not be maintained, because the bank refused to discount the note, and there was consequently never any valid contract between them and the makers.
In this state of authorities we can not hesitate which to adopt .as the safer guide; for however highly we may respect the learning and ability of the Supreme Court of New York, we should not depart from decisions of this court, for the sake of following them, unless satisfied that they are sound, and well sustained by reason and argument too clear to be resisted. The statute which I have quoted is adverse to the New York decision. And besides, we are of opinion that the New York cases are not sustainable upon principle. Neil might be willing to become surety for Ayres to the Clinton Bank, when he would be utterly unwilling to have his note in the hands of Rhodes. He might be willing to lend his name to procure a loan from a party who would indulge him—who would advance to his principal the full face of the note—when he would be utterly unwilling to go security to one who was his personal enemy, or who would exact harsh terms, or heavy interest of his principal. He might have been willing to aid him in procuring a loan of ready cash, when he would have been unwilling to become his security for an old debt. ' He might have expected Ayres would be prompt to pay a bank debt in which the bank had the sole interest, when he know he would be slow to pay an *246 old debt due to a third party. And we think a court should not settle all these matters by declaring it immaterial to him who advanced the money on credit, so long as his principal received the benefit of the advance on the delivery of the note. If the note was to be regarded as a letter of credit, Neil ought to be discharged ; because, if a lettpr of credit in any sense, it was a letter filled up and directed *to a particular house—the Clinton Bank of Columbus ; and no one had a right to advance credit upon it but the one to whom it was addressed. Mr. Neil never agreed to become security to any one else. Walsh et al. v. Bailey, 10 Johns. 182, is directly to this point.
Nor- are we satisfied that the rules applicable to commercial paper, as between these parties, should be held to vary the question, and distinguish it, in any sense, from the ordinary rules applicable to securities. The paper had not been negotiated. It had not, in fact, acquired a commercial character; and, indeed, there is nothing in this case to bring it within the principles of the law-merchant, save the mere form of the promissory note. It. is a case of surety only; and, independent of the recent statute, and of the prior adjudications of this court, it is our judgment that the rule applicable to transactions like this, is the one stated and acted upon in Miller v. Stuart, 9 Wheat. 703 : “That the liability of a surety is not to be extended, by implication, beyond the very terms of his contract. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract, and any variation without his assent is fatal.
Upon its face this note is a contract with the Clinton Bank of Columbus—an offer to become surety to it, provided the note should be accepted and discounted by the bank. Unlike a note signed in blank, implying an authority to the holder .to fill it up, making it payable to whomsoever would advance the money upon it, this note spoke for itself, and could not hayo deceived Rhodes. It is not necessary to sanction this mode of ensnaring securities, by placing it in the power of principals thus situated, to make them liable beyond the strict letter of their contract. The interests of commerce do not, in our opinion, require it; and good morals and the regard for integrity proper to be observed between man and man, would seem to be best subserved by holding to a rule of more perfect good faith.
*247 *Having disposed of this case as to the surety, we come next to a consideration of the rights of the plaintiff in interest as against Ayres. In the first place, as between Rhodes and Ayres, we think that justice demands, and the course of conduct pursued by the bank requires, that she should allow her name to be used in collecting this note for the benefit of Rhodes. The facts agreed show, that as between Rhodes and Ayres, legal rights have been acquired by the former against the latter; and, inasmuch as the note is drawn payable to the Clinton Bank, Ayres should not, after having placed it in Rhodes’ hands, and received value upon it, be permitted to deny that the suit is well brought in her name. He is, under the circumstances, estopped from denying the right of Rhodes to sue in the name of the Clinton Bank of Columbus,, by his own conduct. And the bank ought not to interfere, except to secure itself against a bill of costs. The cases above cited from New York, will sustain our views in this respect, and to the extent, that is necessary to cover this branch of this case, we feel no hesitation in regarding them as authority.
The question remains, shall the judgment be affirmed, as to Neil, and reversed as to Ayres?
Under our statute judgment, may, when the principal and surety are jointly sued, be rendered against one or both, according to the justice of the case. So that a surety may have judgment, if anything supervenes after the date of the contract which operates to' discharge him. But this suit was brought upon a joint contract, and a recovery could only be had according to the allegata et probata. By the conclusion to which we have come, this action could not be sustained against Ayres, because there was no such joint contract as is set forth in the declaration. Neil was never bound to pay the note. He was no party to it. Hence, it follows that the judgment below is not erroneous in any particular.
Judgment affirmed.