Judge Simpson
delivered the opinion of the Court.
In the year 1844 Scales applied to Mock to borrow from him the sum of one thousand dollars, and proposed to give Smith as his surety on the note for the payment of the money. Mock stated - that he was not well acquainted with Smith, but knew Moberly well, and would consider him as sufficient security with or without Smith.
Shortly afterwards Scales presented to Smith, for his signature, a note for one thousand dollars payable to Mock, two years after its date, which note he had signed as principal; and it was signed by Smith, with the express agreement between Scales and Smith, that *267 it was not to be obligatory on the latter unless Moberly also executed it as security.
Scales seems never to have applied to Moberly to execute the note according to his agreement with Smith, having previously understood that Moberly would not. become bound as his surety. The money he expected to obtain from Mock he intended to pay to Moberly in satisfaction of some debts against him, the collection of which Moberly had the control of, and for part of which he was bound as the surety of Scales, who was then in embarrassed circumstances, and desirous to remove from this State to Ohio. His proposed removal he was apprehensive could not be accomplished, unless these debts in the hands of Moberly were paid or in some way arranged, and he was, therefore, anxious to procure the money in order that he might apply it to their payment.
After Smith’s signature to the note had been obtained by Scales, the latter received a message from Mock informing him that he could not loan him-the money in consequence of his having been called upon by a son-in-law to aid him in paying for some land that he had purchased. This fact Scales communicated to Moberly, informing him at the same time that he had a note for one thousand dollars executed by himself and Smith as his surety, payable to Mock, which he Moberly might have, if he could make an arrangement with Mock to assign it over to him, and he would receive it in payment of the aforesaid debts. Moberly being anxious to secure the debts on Scales agreed to take the note for one thousand dollars in paymént instead of the money, provided Mock would assign’it to him. Mock, after some persuasion, agreed to and did assign the note to Moberly without any recourse upon him as assignor. The arrangement was effected by Moberly transferring to Mock the demands on Scales, and by Mock surrendering these demands to Scales for the note for one thousand dollars oil himself and Smith, and transferring the note thus acquired to Moberly for the. debts on Scales.
A ptiacipal procured one surely to his note under a promise to the surety not to deliver it -without another individual should sign and become bound also; the principal passed the note to the payee, who was ignorant of the promise of the principal to procure the second surety.--Held that the surety was bound to the payee, notwithstanding the fraud of the principal.
Neither Mock nor Moberly, at the time of this arrangement, had any knowledge of the agreement between Scales and Smith that the note was not to be obligatory on Smith unless it was also executed by Moberly. Nor does Moberly appear to have known that Mock had required any'security besides Smith, or had objected to him as surety on any ground.
Moberly having obtained against Smith a judgment at law upon the note, the latter exhibited a bill Chancery to be relieved against the judgment. The Circuit Court refused the relief asked for and dismissed the bill. The question for this Court to determine is, whether upon the foregoing facts, and the additional one of the insolvency of Scales at and ever since the time that Moberly acquired the note in the manner detailed, Smith js entitled to any relief against the judgment at law.
The first position assumed in favor of the relief sought for by Smith, is, that the note is not obligatory on him, inasmuch as it was not executed by Moberly; and it was only to be binding upon Smith according to the agreement between him and Scales, in the event that Moberly also signed it as the surety of Scales; and its delivery to Mock was a violation of this agreement and a fraud upon Smith.
Had Mock or Moberly known that such was the.' agreement between Scales and Smith, and bad, notwithstanding this knowledge, taken the note from Scales, there would be an evident propriety in the application of the doctrine contended for. But to permit a secret agreement of that kind between a principal and surety, to have the effect of destroying the validity of the note as to the surety, after it had been used by the principal and belonged to the person to whom it was made payable or his assignee, would be to encourage the perpetration of fraud upon innocent individuals. As the surety placed it in the power of the principal to commit a fraud, the naked question is, shall he be the sufferer by the fraud, or shall the loss fall upon others, who had no notice of the condition upon which he signed the writing. There would seem to be no dif» *269 ficulty in the solution of this question. The delivery of the note by Scales to the person to whom it was made payable, was, under the circumstances, clearly a fraud, upon Smith-; but neither Mock nor Moberly had any participation in the fraud, and should not be injured by it. Smith having left the note in the possession of Scales, his principal, and having failed to apprize Mock, to whom it was made payable, that the execution of it by him was conditional, and having thereby given to Scales the power to use it as a valid note, must be regarded, so far as Mock is concerned, as in effect vesting him with a right to do so. Smith cannot, therefore, on this ground avoid the liability imposed on him by the execution of the note, and the loss, if any, must be borne by him and not by Mock or his assignee. This is, undoubtedly, the equity of the case; and if, as contended, the execution of the note by Smith being only conditional, made it but an imperfect and partially executed writing, and therefore not obligatory upon him as his act and deed, this matter constituted a purely legal defence, and is not a proper subject of equitable cognizance.
In such case the surety makes the principal his agent to deliver the note, and if there be any condition unknown, to the payee it will not affect him: (2 Dana,. 142.)
But a delivery of a writing of this character under such circumstances, to the principal, does not have the effect of characterizing it as a mere escrow, but on the contrary the principal should be considered as the agent of the surety, and empowered by him to pass the writing to the person to whom it may be made payable, and his delivery as being sufficient to make it effectual unless the payee had notice of the special terms upon which it was signed. The implied discretionary authority to use the note, arising out of its possession by the principal, uncontradicted by its terms or any thing apparent on its face, cannot be restricted by any agreement between the payors themselves, of which the payee had no notice. The same principle is substantially decided in the case of the Bank of the Commonwealth vs Curry, (2 Dana, 142.)
Thebilis rofStexS change is generto7 promissory j°teS’ Marshall «OMna neg-should suffer innocent^holder! eifand^ent^ont in blank may bind the person so signingfor the mayUbe inserted in the note, notwithstanding it be in violation of a paiol condition.
The law in relation to the execution of deeds and specialties is not applicable to promissory notes. In the lan§uage'°f ^his Court, in the case of Taylor &c. vs Craig, (2 J. J. Marshall, 460:) “Promissory notes are quasi mercantile, but are not in this country, as they are *n -^ng^an^> since the statute of Anne, negotiable- pre. cisely as bills of exchange. But for many purposes, the doctrine of bills of exchange applies to promissory notes, because the reason of it applies equally to both kinds of paper. The law in relation to the execution of both is the same. And justice, and the exigencies of . . , - , ° commerce require that the drawer oí a bul, or payor m auote, should be bound sometimes, when, if the instrument were a deed he would not be liable.
“Frequently the maxim, ‘he who trusts most shall lose,’ applies to bills and notes; and it is often better that a negligent drawer should be held responsible than that an innocent holder or obligee should suffer.”
Upon this principle it has been repeatedly decided, that if a note is signed in blank, the maker will be bound for whatever sum may be inserted, although he may have signed his name upon the express parol condition that the sum should be less than that which was afterwards inserted. For the same reason the surety should be liable for the amount of a note, which he signs and leaves with the principal, to be used upon the condition, known to themselves alone, that it shall be signed by another person, whether the condition be complied with or not.
Another ground upon which Smith’s right to equitable relief is claimed is, that the note as drawn being payable to Mock, Scales had no authority to deliver it to any other person, and the arrangement by which Moberly obtained it was virtually a delivery of it to him and not to Mock, and a fraud upon Smith in which all the parties to the arrangement participated, and which consequently entitles Smith to be discharged from the payment of the debt.
A surety executing a note which' is by law assignable cannot be considered as limiting its use' to the payee and-to be his debtor»' alone: (S Wdndell 66.)
The note was made by Scales for the purpose of procuring money to discharge the debts in Moberly’s hands. Whether that design was made known to Smith does not appear. The note was used to accomplish the object for which it was originally intended, not it is true in the manner contemplated, but in one that did not alter or increase, the liability of the surety. Had the money been obtained on the note by the principal, it would not have been to the advantage of the surety, or placed him in a better position. It cannot therefore be material, so far as he is concerned, whether the note was passed directly to Mock, or indirectly to Moberly.
But it is argued that Smith might have been willing to have been the debtor of Mock, and still have been unwilling to have been the debtor of Moberly. And, as he executed the note to enable Scales to obtain money, it was a perversion of the object of its execution, to apply it to the payment of pre-existing debts.
As the note was assignable under the statute, Mock, had he advanced the money upon it, might have transferred it to Moberly or any other person. A surety, therefore, in executing a writing assignable in its character, cannot be considered as intending to limit its use to the payee, and to be his debtor alone, and not the debtor of his assignee, if he should transfer the paper-And as the principal intended to apply the money, had he obtained it from Mock, to the payment of the debts in the hands of Moberly, the application of the note itself to the same purpose, upon his failure to procure the money, is not more prejudicial to the surety; nor can it be regarded as a perversion of the object for which the' paper was originally designed, being in effect an accomplishment of the same object. This doctrine has been recognized as applicable to promissory notes in analogous cases in the State of New York: Bank of Rutland vs Buck, (5 Wendell, 66;) Utica Bank vs Garison and others, (10 Wendell, 314.)
J. W. L. Harlan for plaintiff; B. Sf A. Monroe,. Daviess, and Taylor for defendants.
Nor is the legality of the transaction affected by the' fact, that the transfer by Mock, the payee, was merely formal, and that he never had any beneficial interest in the paper. Had Mock endorsed the note in blank to have enabled Scales to negotiate it, and to procure the money from some other person, and it had thereby passed into the hands of an innocent holder for a valuable consideration, Smith, the surety, would certainly have remained liable. The transfer by Mock without recourse does not essentially alter the case. Moberly did not commit a fraud in receiving the note instead of the money. As Mock was unable to accommodate Scales by loaning him the money, it was not fraudulent upon his part to transfer the note to Moberly to effect the same object that would have been attained by the loan of the money. The whole arrangement was for the benefit of Scales, for whose use and accommodation Smith executed the paper. There does not, therefore, seem to be any reason for characterizing the transaction as fraudulent.
Wherefore the decree is affirmed.