The Passumpsic Bank *v.* Goss et al.

---

THE PASSUMPSIC BANK *v.* ELMER GOSS AND JOSEPH PAGE.

*Promissory note. Principal and surety. Variance.*

P. signed a joint and several note, with G. as his surety, payable to a bank, but with the agreement between him and G. that the latter was not to use the note unless he obtained another surety upon it. In violation of this agreement G. procured the note to be discounted at the bank. *Held,* that this constituted no defence for P. upon the note, unless the officers or directors of the bank were aware of such agreement.

In a declaration in assumpsit upon a promissory note, payable in three months from date, the note was described as payable in three from date; but directly after this description the declaration proceeded to aver that "the said three months from the date of said note have long since elapsed," etc., etc. *Held,* that the omission of the word *months* in the first part of the declaration did not create a fatal variance.

ASSUMPSIT. The first count of the declaration was as follows : "In a plea of the case for that the said defendants, at said St. Johnsbury, heretofore, to wit, on the 18th day of March, A. D. 1857, by their promissory note, under their hands, of that date, for value received, jointly and severally promised the plaintiffs to pay them one hundred dollars in three from the date of said note ; and the plaintiffs aver that the said three months from the date of said note have long since elapsed, yet the defendants, though often requested," etc., etc.

In addition to this count the declaration also contained the common counts.

The suit was defended only by the defendant Page, who plead the general issue, with notice of special matter in defence, which was supported by the evidence introduced by him on trial, as set forth below. The case was tried by jury, at the December Term, 1857, of the Caledonia County Court,—POLAND, J., presiding.

The plaintiff read in evidence a joint and several promissory note for one hundred dollars, dated March 18, 1857, signed by both of the defendants and payable to the plaintiffs in three months from date.

The defendant Page, who was conceded to be merely a surety upon the note, introduced evidence tending to show that when he signed the note, it was agreed by Goss that he would not use it unless he could also procure the signature of one Alonzo Brown as co-surety upon it ; and also that when the note was discounted by the plaintiffs this agreement was known to John Bacon, one of the plaintiffs' directors, who was present when it was discounted, and consented thereto. The plaintiffs' evidence tended to show that none of the directors or officers had any knowledge of any such agreement, when the note was discounted.

The defendants insisted, and requested the court to charge the jury, that even if neither the plaintiffs nor any of their direc-tors had knowledge of this agreement between Goss and Page,

still the plaintiffs were not entitled to recover against Page upon this note, and also that there was a fatal variance between the declaration and the note itself.

But the court declined so to charge the jury, but instructed them that the plaintiffs were entitled to recover of the defendant Page under the declaration, unless they should find that the plaintiffs, or some of their directors, were at the time of the discount of the note aware of the agreement between Goss and Page, which the defendants' evidence tended to show existed.

To the refusal of the court to charge as requested, and to the charge as given, the defendant Page excepted.

*Willard & Ross* and *Peck & Colby*, for the defendant Page, insisted 1st, that the variance was fatal, and cited on this point, 1 Smith's Lead. Cases 547–554–6 ; 1 Greenleaf's Ev. sec. 66 and notes ; 2 Phillips Ev. 777 and notes ; *Woodstock Bank* v. *Downer*, 27 Vt. 482 ; *Gowry* v. *Ward*, 25 Vt. 217 ; *Gates* v. *Bowker*, 18 Vt. 23 ; *Bank of Manchester* v. *Allen*, 11 Vt. 302 ; *Curley* v. *Dean*, 4 Conn. 257 ; *Kellogg* v. *Denslow*, 14 Conn. 411 ; *Wells* v. *Gerling*, 4 Eng. C. L. 264. 2d, That Page was not liable on the note, for the reason that Goss used it contrary to the agreement between them, without obtaining Brown's name as a surety upon it, and on this point they cited *Pawling* v. *Uni. States* 4 Cranch 219 ; *Fletcher* v. *Austin*, 11 Vt. 446 ; *Leaf* v. *Gibbs*, 19 Eng. C. L. 475 ; *Johnson* v. *Barker*, 4 Barn. & Ald. 440 ; *Ridcock* v. *Bishop*, 3 Barn. & Cres. 605 ; *Awde* v. *Dixon*, 5 Eng. L. and Eq. 512 ; Collyer on Partnership, sec. 541. 3d, That no recovery could be had against Page upon the common counts ; *Sanford* v. *Norton*, 14 Vt. 228 ; *Wells* v. *Gerling*, 4 E. C. L. 264 ; *Stratton* v. *Rostate*, 2 Term 366.

*Slade & Edwards*, for the plaintiffs.

1. There is no fatal variance, because the whole of the first count taken together accurately describes the note.

2. The note is evidence which will entitle the plaintiffs to recover under the general counts. 2 Greenl. Ev. sec. 112 and notes.

3. The charge of the court in regard to the effect of the vio-

lation by Goss of the agreement between him and Page in regard to obtaining another surety on the note was correct. Story on Prom. Notes, sec. 197 and note; *Usher* v. *Rich*, 10 Adol. & Ellis 784; *Bramah* v. *Roberts*, 1 Bingham 469; *Goodman* v. *Harvey*, 4 Adol. & Ellis 870.

BARRETT, J. Goss procured Page to sign the note in suit as his surety, for the purpose of enabling him to obtain a loan at the bank, in the usual course of discount. The money was obtained, and, the note not being paid, this suit was brought.

Two questions are raised by the bill of exceptions, and have been discussed at the bar. 1st, as to the charge given, and the refusal to charge as requested; 2d, as to the alleged variance.

I. As the case shows that neither the bank, nor any of its directors, had knowledge or notice of the alleged agreement between Goss and Page, can Page avail himself of that agreement in defence to this suit?

We can not regard this case as coming within the principle of the decision in *Fletcher* v. *Austin et als.*, 11 Vt. 447, and in the similar case of *Pawling et als.* v. *The United States*, 4 Cranch. In those cases the bonds bore evidence on their face, that they had not been completed according to the original intention. They carried notice of that fact to the respective obligees, and put them on inquiry, and thus charged them with full knowledge of the true state of the facts touching the execution and delivery thereof.

The case of *Leaf* v. *Gibbs*, 4 Car. & P. 466, is broadly distinguishable from this, in the fact, that the plaintiff procured the notes to be given to secure the payment of an existing debt for goods sold to two of the signers, under an arrangement that the defendant's mother, as well as the defendant, should also sign them. In pursuance of this arrangement, the plaintiff procured the signature of the defendant. On application to the defendant's mother, she refused to sign. The plaintiff, however, kept the notes, and sued the defendant on one when it became due. The plaintiff was fully cognizant of the arrangement, and knew that, as against the defendant, he was not entitled to hold and enforce the notes.

The case of *Awde* v. *Dixon*, 5 L. & E. Rep. 512, upon a first impression, seems to come nearer to the present case, and to countenance the defence here made. But on examination it clearly stands on a different ground. In that case the payee's name was left blank when the defendant signed the note as surety. It was inserted at the time the note was delivered, and the money was advanced upon it, the principal " *stating falsely that he had authority to deal with it.*" Moreover, the defendant signed, having a space for the name of the person who was to sign as co-surety. With the note in this condition when presented to the plaintiff, he becomes the payee, by having his name inserted, and receives it. It is obvious from the report of the case, that the court deemed the insertion of the payee's name, and the passing off of the note, to be a forgery upon the defendant, the same as if the sum had been left blank when signed by the surety, and afterwards had been filled with a larger sum than had been agreed between the principal and surety.

In the case of *Johnson et al.* v. *Barker*, 4 B. & Ald. 440, it seems that the deed had never been *delivered* to the plaintiffs. It had only been entrusted to Burnell, one of the creditors, for the purpose of having all the creditors procured to sign it. Burnell was entitled to hold it for that purpose alone, until all the creditors should have signed it. All not having signed, it remained as an *escrow* in his. Moreover, as it was a composition deed, and embraced all of Burpin's creditors as one party to it, and they were all named at its foot, it was upon its face incomplete, as between the parties, until all the creditors should have executed it.

In the case in hand, the note was perfect on its face, and was delivered to the plaintiffs in the usual course of business, in behalf of the party apparently entitled to deal with it.

The cases cited by counsel for the defendant, involving the negotiation of partnership paper by one partner after the dissolution of the partnership, bear an analogy quite too remote to entitle them to control, or even indicate the proper decisions of this case. And we conceive that it would be forcing an analogy where none exists, to treat Goss as holding the relation of *agent* to Page, in dealing with the note in question, with the view of

holding, as a consequence, that Page is acquit of liability, because *his* agent, Goss, transcended his authority.

The object of Page's signing the note was that money might be obtained upon it of the plaintiffs. It carried evidence of this fact upon its face. Being apparently a perfected instrument, duly executed, and designed to be used for that purpose, it was entrusted by Page with Goss. It was used by Goss for the purpose indicated upon its face, and the money was advanced upon it in the ordinary course of loan, in good faith, and without notice or knowledge of any condition or reservation in favor of Page, as to the circumstances under which it was or was not to be used by Goss.

As between the plaintiffs and Page, who ought to be responsible for Goss' violation of his agreement with Page, that he would not use the note, unless Brown should be procured to sign it as co-surety ?

In the first place it is to be remarked that Page alone was in privity with Goss, so far as that agreement is concerned. In view of that fact, common principles would indicate that Page should stand responsible for the personal confidence which he reposed in Goss. The plaintiffs trusted to the paper, which was genuine, and apparently perfected for the purpose intended to be served by it. They were not called on to exercise any personal confidence as to anything beyond the genuineness of the paper and the responsibility of the signers. See *Nash* v. *Skinner*, 12 Vt. 219 ; *Commercial Bank of Buffalo* v. *Kartright*, 22 Wend. 348,—opinion of VERPLANK, Senator.

If the case be considered in reference to the existing equities, it can hardly admit of doubt that they are with the plaintiffs. They have parted with their money, in good faith, upon paper that Page entrusted with Goss for the very purpose of enabling him to obtain that money of the plaintiffs, and in a condition to enable him to use it for that purpose, without exciting any suspicion or suggesting any query as to his right to use it. If Page would have shielded himself from liability on that paper, as it was when he thus entrusted it with Goss, a practical and proper sense of fair dealing would seem to require, that in some way he

should have put the plaintiffs on their guard against taking it, unless it should have been signed by Brown.   In accordance with this view is an old and very uniform doctrine of the land, that where, through the fraudulent act of a third person, one of two innocent parties must suffer, he who has clothed such third person with the means of perpetrating the fraud, must bear the loss. Paley on Agency 201 ; *Goodwin* v. *Eastman et al.* 4 N. H. 455 ; BAILEY, J. in *Whithead* v. *Tuckett*, 15 East. p. 442 ; *Barber* v. *Britton & Hall*, 26 Vt. 112.   See also the language of Senator VERPLANK, in the opinion above cited, p. 368.

The propriety of this view is strongly illustrated by the well known course of this kind of business.   The instance has hardly occurred of a bank making inquiry when paper, genuine and apparently designed for discount, is presented at the counter, whether, as against the makers, it is entitled to be used.   If the court should sustain this defence in this case, it would become necessary for banks, and equally for all persons, upon the offer of a note with sureties, in the usual course of business, to call before them all the makers, and ascertain by personal inquiry, whether it was " all right," and not subject to some side agreement or reservation in favor of some of the sureties, that might render it invalid as against them.   We think such a rule of law would not only contravene the well established usages of business, but would surprise, if not shock the judgment of the community upon this subject.

We regard those usages as well as the general understanding of business men in this respect, to be based upon firm legal principle.   In our judgment the county court committed no error against the defendant Page in reference to this ground of defence.

II. *The alleged variance.*   A variance is claimed to exist by reason of the omission in the declaration of the word " *months*," after the word " *three*," in the description of the note.   That omission clearly resulted from a mere slip of the pen.   Every lawyer understands the stringency as well as the propriety of the rule requiring the proof to conform to the allegation, and particularly requiring that a contract be set out correctly either in tenor or legal effect.

Does the declaration sufficiently set out the note ?   The note

is payable in three months from its date. After describing it, with the omission of the word "*months*," the declaration then proceeds : " and the plaintiffs aver that the said three months from the date of said note have long since elapsed," etc., in the common form of alleging the breach. Now it is plain that without that averment the declaration would be unintelligible as to the time when said note was payable ; for it might as well be three *days*, or three *years*, as three *months* from its date. But with that averment it is perfectly certain, on the face of the declaration, that the note declared on is payable in *three months* from its date. This being so, no one could be in doubt as to the precise cause of action specially counted upon. We therefore think the declaration answers substantially the requirement of the rules of law in this respect. We know of no rule of construction or intendment that forbids giving effect to that averment in its connection with the other parts of the declaration, as showing the time when the note was payable. The case of *Williams et al.* v. *Willson et al.*, 2 Vt. 266, is an ample precedent upon this subject.

The judgment is affirmed.