## McCramer v. Thompson *et al.*

1. **Promissory note:** ERASURE OF THE NAME OF A SURETY. Where the principals and three sureties signed a promissory note, after which, and before delivery, by an arrangement between the principals and the sureties who *first* signed the note, his name was erased therefrom without the knowledge or consent of the other sureties; and the note was then delivered to the payee in a condition which showed upon its face that the name of the surety who *first* signed the same had been erased; whereupon the note was received with knowledge of the relation of principal and surety existing between the makers; it was *held:* First, that the discharge of the surety released the co-sureties who signed the note when his name was upon it. Second, that the payee received the note under circumstances which would put a reasonably prudent man upon inquiry; and was charged with knowledge of the rights of the co-sureties. It was also held that if the makers of the note were all principals the erasure of the name of one would be a discharge of the others only *pro tanto.*

### FRIDAY, OCTOBER 12.

THE appellants, Thompson and Sawyer, were the sureties of Monett and Chipman, upon a joint note, payable to plaintiff, dated February 1, 1861, due in six months, for $497.10. Plaintiff had a claim against the "Lee and Des Moines Bridge Company." Monett and Chipman leased the bridge and made this note to pay this debt, which they in such contract of lease had assumed.

Thompson was a stockholder in the bridge company; Sawyer was not. At the time they signed the note, one Tonkinson had signed it—the principal assured them that others would sign. With this understanding they procured their signatures, and the name of Jas. A. Crabtree was afterward procured. Before the note was delivered to plaintiff (or his attorney) Tonkinson's name was erased or defaced, by an arrangement with the principals, and

Crabtree's name was cut off, so that no trace thereof remained.

When the note was received by plaintiff, it is uncertain whether he had knowledge that any of the parties were sureties. He did know, however, for he could see, that Tonkinson's name had been to it. Chipman, the party delivering it, was at the time interrogated as to the erasure, and answered that the parties had consented to it, or that it was done by consent of parties. Appellants did not know that Crabtree actually signed the note, nor that the two names (Tonkinson's and Crabtree's) were erased or cut off until long after it was delivered. They knew that the object in making the note was to satisfy plaintiff, and to enable the principals and the company to complete their arrangement for leasing the bridge. The names were signed in the following order: Monett, Chipman, Tonkinson, Thompson, Sawyer. Tonkinson's was erased after Thompson and Sawyer signed. Crabtree signed after, and after the erasure subsequently took his name off; but of such erasure or spoliation Thompson and Sawyer had no knowledge. Upon these facts, under the instructions, the jury found for plaintiff, and the sureties appeal.

*J. C. & B. J. Hall* for the appellants.

*M. D. Browning* for the appellee.

WRIGHT, J.—The action of the court in admitting the note, without evidence from plaintiff explanatory of its appearance and condition, scarcely demands

1. PROMISSORY NOTE: erasure of name of surety. attention. The subsequent proof so fully and entirely developed the whole transaction, that such preliminary question ceases to be of any importance. Having the entire evidence, appellants' liability or non-liability depends upon the consideration of

certain legal propositions, and, these determined, it is of no consequence whether the note was properly or improperly admitted in the first instance. We remark, also, that the material inquiry relates to the erasure of the name of Tonkinson, for his name was to the note at the time the sureties signed it, and was erased afterward, and before the delivery, and without their knowledge or consent; and that it had been erased was known to plaintiff at the time the note was received. Crabtree, on the other hand, signed it after they did, and plaintiff had no knowledge or intimation that he had so signed. If the circumstances attending the Tonkinson signature, therefore, are *not* sufficient to release the sureties, of course those attending Crabtree's would not; and if they *are* sufficient, the defense is probably fatal to plaintiff's right to recover, and the judgment must be reversed. So that, in any event, we may confine ourselves to the effect of the Tonkinson erasure, for, whatever the conclusion, it, in one view at least, becomes decisive of the whole case.

We are left to presumption as to the time the erasure was made. That it was made *before* the note was delivered to the payee, is one of the conceded facts of the case. If the alteration or erasure had taken place *after* its issue, *after* the note had come to plaintiff's hands, very different questions would arise. *Hall* v. *McHenry*, 19 Iowa, 521. Made before, he having knowledge that it was made at some time prior and by some one, the question is, whether, as a prudent man, he was justified in taking the note without making other and further inquiries than he did; and whether, taking under the circumstances disclosed in the testimony, he is protected as an innocent holder. And this involves the somewhat correlative inquiry, whether, after the sureties had signed the note and intrusted its delivery and the consummation of the contract to the principals, they must suffer the consequences

of this change or erasure, or whether the law imposes upon the payee the duty of ascertaining for himself the actual circumstances attending the same; and whether, after being put upon inquiry, he fails to follow it up, he should not be treated as having a knowledge of all the facts to which such investigation would have led him.

In the examination of these questions we shall treat plaintiff as a holder for value, or place him in the same attitude as though he had, at the time the note was delivered, paid a full consideration for the same. Whether, under the facts, he should be so regarded, we need not determine. For, conceding this much, our opinion is, that the verdict was nevertheless wrong, and that a new trial should have been ordered.

And this conclusion we reach without entering upon the much controverted question of what would be plaintiff's right, if there had been no change in the signatures after the sureties had signed the note, or if it stood alone upon the effect of the representations made by the principals that they would procure other sureties before delivering the note to the payee. We need hardly remark that upon this question there is an irreconcilable conflict in the authorities; and while the writer of this opinion, at least, inclines to concur in the view that the payee of negotiable paper, taking it without notice of such representations or understanding or anything to put him upon inquiry, would not be bound nor affected thereby, and as a consequence that such defense could not avail; yet, as the question does not arise, it is left open for future consideration. In some of the recent cases, it has undergone a very full discussion. Among others we refer to *Willet* v. *Parker*, 2 Metc. (Ky.), 608; *Bank of Missouri* v. *Phillips*, 17 Mo., 29; *Dardoff* v. *Forseman*, 24 Ind., 481, all holding that such defense would not be available. *Contra*, see *People* v. *Bostwick*, 43 Barb., 9; *S. C.*, 32 N.

Y., 445; *Perry* v. *Patterson*, 5 Humph., 133. In addition to these we have examined the following cases and authorities, all bearing with some directness upon the question here involved. *Bibb* v. *Read*, 3 Ala., 88; *Hatcher* v. *Austin*, 11 Verm., 447; *Black* v. *Lamb*, 1 Beasley (N. J.), 108; *Bank* v. *Evans*, 3 Gr. (N. J.), 155; *Johnson* v. *Baker*, 6 Eng. L. and E., 479; *Leaf* v. *Gibbs*, 4 C. & P.; 464; *Sharp* v. *United States*, 4 Watts, 21; *Brown* v. *Noyes*, 7 Ward, 188; *Chouteau* v. *Suydam*, 21 N. Y., 179; *Fay* v. *Richardson*, 7 Pick., 91; *Graves* v. *Neiber*, 10 S. & M., 9; *Camberledge* v. *Lawser*, 40 Eng. L. & E., 228; *Pawling* v. *United States*, 4 Cr., 219; *Corbett* v. *Miller*, 43 Barb., 305; 2 Pars. N. and B., 28; *Passumpsic Bank* v. *Goss*, 31 Verm., 315; *Dixon* v. *Same*, Id., 450; *Smith* v. *Doak*, 3 Tex., 215; *Hill* v. *Sweet*, 5 N. H., 168; *Dunn* v. *Smith*, 12 S. & M., 602; *Nash* v. *Skinner*, 12 Verm., 219; *Bank* v. *Kortright*, 22 Wend., 348; *Putnam* v. *Sullivan*, 4 Mass., 45; *Thurston* v. *McKown*, 6 Id., 428; *Stover* v. *Logan*, 9 Id., 59; *Hall* v. *Fuller*, 5 B. & C., 750; *Charles* v. *Marsden*, 1 Taunt., 22; *Bank* v. *Woodworth*, 18 Johns., 315; 1 Pars. N. and B., 110, 112, 232; *Arode* v. *Dixon*, 5 Eng. L. and E., 512; *Lloyd* v. *Howard*, 1 Id., 227; *Palmer* v. *Richards*, Id., 529; *Seely* v. *The People*, 27 Ill., 173; *York Insurance Company* v. *Brooks*, Maine Rep. (and note of Judge RED-FIELD to these two last cases in 2 L. R., 1863, 346; 3 Id., 1864, 402); *Smith* v. *United States*, 2 Wallace, —; *Goodman* v. *Eastman*, 4 N. H., 455; *Berry* v. *Anderson*, 22 Ind., 36; *Pepper* v. *State*, Id., 399; *Fertig* v. *Buchu*, 3 Barn., 308; *Fullerton* v. *Sturges*, 4 Ohio, 529; *Nance* v. *Lary*, 5 Ala., 370; *Montague* v. *Perkins*, 22 L. and E., 516.

Some of these cases relate to official bonds, some to acceptances in blank, some to bonds of guardians or administrators, others to deeds delivered to third persons

McCramer v. Thompson.

to be handed to the grantee upon conditions, some where a name or names had been forged, others where certain names were inserted in the instruments but not signed to the same, some where the payee or obligee knew of the promise to the sureties, while in others they did not. Some make a distinction between negotiable paper and official bonds; others seem to overlook it. In some of them the paper was used for a purpose other than that contemplated, while many of them discuss at great length, fully reviewing the authorities, the liability of sureties who sign upon the faith and condition that other names are to sign also, the payee having no knowledge of such condition or arrangement.

All the cases of the latter character recognize more or less fully the principle stated in *Lickbarrow* v. *Mason*, 2 L. R., 70; that whenever one of two innocent persons must suffer by the act of a third, he who has enabled such person to occasion the loss must sustain it. In some of them, however, its applicability is denied; while in others, each party claimed that he was innocent, and that the other had enabled the third person to occasion the injury or loss. In others again, it is insisted that a surety may hand a note to the principal to be delivered to the payee only when others named and agreed upon shall sign it; that in the hands of the principal it is an *escrow;* and that a delivery before the compliance with such conditions is void, and that the payee is not protected. Others, as it seems to me with more reason, deny that a note can thus be held as an *escrow;* maintaining that the promisors are one party, the promisee the other, and that an instrument can only be delivered as an *escrow* to some third person. All of the cases, however, where the question arose, hold that if the payee had knowledge of such an arrangement, he would be bound by it, and that the defense would avail those who signed

upon the faith of such an agreement, and in like manner none have been found which hold the payee or obligee protected where the circumstances were such as to put him upon inquiry. This rule is recognized, in its negative form at least, in the note of Judge REDFIELD to the case of *The Insurance Company* v. *Brooks*, 3 L. R., 402, where he says: "It seems to us, upon principle, that where there is nothing upon the face of the paper indicating that other co-sureties were expected to become parties to the instrument, and no fact brought to the knowledge of the obligee before he accepts the instrument calculated to put him on his guard in regard to that point, and which would naturally have led a prudent man, interested in the opposite direction, to have made the inquiry before accepting the security, the fault cannot be said to rest, to any extent, upon the obligee." Of course the conclusion is legitimate, that if there was sufficient to put him upon his guard, or such information as would naturally lead him to make inquiry, the obligee would be in fault and should sustain the loss if any arises. Again he says (2 L. R., 347): "The surety must run the risk of the fraud of his own agent, unless there is something *upon the face of the paper* to show that other parties were expected to sign it. The payee may be affected and put upon inquiry by notice *in pais*, however, as well as by some indication upon the instrument itself. In most of the cases it will be found that this inquiry was naturally suggested by the paper itself. See *Thatcher* v. *Austin*, 11 Verm., 447; *Pawling* v. *United States*, 4 Cranch, 219; *Duncan* v. *United States*, 7 Pet., 435. In one case the rule is thus stated: "An estoppel (against the sureties) does not exist in such cases, where there are circumstances calculated to put the obligee upon inquiry, or that may operate as notice of the imperfect condition of the instrument; for in such case, the obligee does not

stand as an innocent party; his own negligence is the proximate cause of the injury he sustains." *Pepper* v. *The State*, 22 Ind., 419 ; and see *Berry* v. *Anderson*, Id., 36 ; *Swan* v. *The North Brit. Austr. Company*, 10 Jur., 102 (7 C. B., 400).

Whether the principal violates his agreement to obtain the other names promised; whether he fills a blank acceptance for more than was agreed ; whether he appropriates the note, to the sureties' injury, to another purpose than that contemplated; in any or all these cases, it must be conceded that as between them it would be manifestly unjust and inequitable to hold the surety liable. The surety may most truthfully say "*non veni in hoc vinculo*." The difficulty in all such cases arises when the rights of third persons intervene.

When we come to consider these, however, it must be remembered that the law imposes the obligations of good faith and diligence, upon a payee as well as upon a promisor or obligor. Neither can protect himself from the consequences of his own negligence. And where one has acted in good faith and exercised due diligence, and the other is fairly and naturally put upon inquiry and fails to follow it up, the latter cannot say we are equally innocent. If he accepts an instrument incomplete upon its face and giving clear indications that it has been changed, he cannot in justice and truth say, I am innocent, and that the surety must recover for any injury he has sustained against the principal for any fraudulent misconduct.

In our investigations we have found no case precisely like that before us. Upon principle, however, the analogy is clear enough. Here was a *joint note*. When presented to the payee, one of the names was obliterated or erased. This could be seen, was seen and talked about. This name was prior in place to those of the present appellants. It was there clearly and unquestionably when they signed

it.   Appellee knew, therefore, that the name of Tonkinson was at one time to this note.   He knew it just as well as though all the names of the promisors had been recited in the body of the note, and one of them (say Tonkinson) had failed to sign it.   In such a case there is but little if any question, under the authorities cited, as to the rights of the other promisors, and the duty of diligence on the part of the payee.   In the absence of fraud both parties in such a case *may stand upon the facts*, and their rights are to be adjudged accordingly.   For if the inquiry thus suggested had been followed up, appellee would have learned the true state of the case, and knowing this there could be no pretense of a right to recover.

The note then being in this condition, he was put upon inquiry.   Thus situated, did he manifest the diligence required by law?   He inquired of the principal, who advised him " that the parties had consented to it."   This was untrue, and plaintiff was not justified in relying upon such representations.   If the act of erasing the name of one of the sureties, without the consent of the others, would not conclude those not assenting, most clearly a representation of this kind would not.   Plaintiff's duty, being put upon his guard, was to go to a source where he could certainly learn the truth—to those who, failing to indicate their dissent, would be thereby estopped.

But if he could simply rely upon the assertion of the principal under the circumstances, so he might if the appellants' names had been forged, and he had relied upon the principal's averment that they were genuine.   We have found no case going so far as to conclude the other promisors by the act or representation of one where the instrument contains upon its face matter calculated to put the payee upon inquiry.   And it must be very clear that to hold them so bound would destroy all right or protection resulting to them from the incomplete nature

of the instrument. For, by such misrepresentations, made by an interested party, it would become invested with all the sanctity and validity of the most perfect and regular paper or writing. For the most obvious reasons, this cannot be the rule.

The foregoing views of the law are based upon the supposition that plaintiff knew at the time he received the note that appellants were but sureties, and that Monett and Chipman were the principals. Whether he had this knowledge is a question of fact which should be submitted to the jury under the testimony. The instructions do not seem to have regarded this inquiry as very material, nor to have discriminated with entire clearness between appellants' rights, if known, as sureties, instead of standing as principals in common with the other makers. And in a case so important to the parties, involving questions so difficult and somewhat novel in this State, we have had the less hesitation in ordering a new trial, that the attention of the jury might, under proper instructions, be directed to this distinction and to these inquiries.

If plaintiff or his agent, when taking the note or before, knew that appellants signed the note as sureties, then the rules above stated and recognized should be given to the jury for their guide. Of course, if this was not known, but as far as he knew or had reason to know they were all principals, then this erasure would not operate to discharge appellants entirely, but only *pro tanto*. That is to say, they would still be liable for their proportion of the debt, and to that extent plaintiff would be entitled to recover.

We only remark in conclusion that there was no evidence tending remotely to show that appellants, or either of them, had made any payment upon this note. The instructions based upon such assumption were therefore erroneous.

Because of this, and because the law was not properly given to the jury upon the main issue involved, as above indicated, the cause is reversed, and remanded for trial *de novo.*

Reversed.