## M. C. JORDAN *v.* E. L. JORDAN *et al.*

PLEADINGS AND PRACTICE. *Bills and notes. Escrow. Surety.* It is not a good defense to an action by the payee against the makers of a promissory note, complete and perfect on its face, that the defendants are the sureties of the principal maker, and after signing the note entrusted it to him upon the condition that he procure the signature of a designated person as an additional surety, and that he had delivered the note to the payee without their knowledge or consent and without complying with the condition; it must be further averred and proved that the payee, before the delivery to him, had notice, express or constructive, of the condition.

### FROM RUTHERFORD.

Appeal in error from the Circuit Court of Rutherford county. W. H. WILLIAMSON, J.

LELAND JORDAN for Jordan.

BURTON & RIDLEY for Jordan and others.

COOPER, J., delivered the opinion of the court.

Suit upon a promissory note, in which the verdict and judgment were in favor of the defendants, and the plaintiff appealed.

The note was given for the rent of land let by the plaintiff to T. W. Jordan for the year 1870. It bears date October 16, 1869, and is made payable to M. C. Jordan on the 25th of December, 1870, for $750. It is in the usual form, "we or either of us promise to pay," and is signed by T. W. Jordan, who

is not sued, and by the three defendants. A scroll or seal is affixed to the name of the promisors. Our statute having abolished the use of private seals, and having provided that the addition of a private seal to an instrument of writing shall not affect its character in any respect (Code, sec. 1804), these scrolls are of no moment. It is therefore properly conceded that the instrument is a negotiable promissory note: Code, sec. 1956. Moreover, bills, bonds or notes for money have always been negotiable in this State although under seal: Code, sec. 1957.

The defendants, among other pleas, pleaded that they signed the note as the sureties of T. W. Jordan upon the express condition that he would procure Thomas S. Williamson to sign the same as joint surety with them before the note should be delivered by T. W. Jordan to the plaintiff, and that without the signature of the said Thomas S. Williamson to the note, he being good and solvent, the defendants say they never would have executed the note, or become bound thereon. The plaintiff demurred to this plea, assigning as a cause of demurrer, that it failed to aver that the plaintiff had notice of the condition, under which the defendants say they signed the note, at the time the note was delivered to him. The circuit judge overruled the demurrer. The plaintiff then took issue upon the plea. On the trial of the issues joined, the judge charged the jury that if they found from the proof that the defendants signed the note upon condition that Williamson should also sign it, and placed the note in the hands of the principal maker to obtain his signature, the note was

not completely executed as to them unless Williamson signed it; and if he failed to do so, and the maker delivered it to the payee, that would not change the character of the instrument; it would still be an escrow, and no action could be maintained upon it.

The plea and demurrer thereto, as well as the charge of his Honor, do squarely raise the question whether the delivery of a negotiable promissory note, complete and perfect on its face, to the payee for value, by the maker to whom it has been handed by the co-makers, his sureties, upon condition that he procure the signature of another person before delivery, without any notice, direct or constructive, to the payee of the condition, makes the note binding on the sureties?

The question, upon principle, presents no serious difficulty, and the weight of authority is, at the present day, decidedly in favor of the conclusion to be thus reached. There is, however, some conflict in the authorities both upon links in the chain of reasoning adopted to reach the conclusion and upon the conclusion itself. But the conflict is not so great as the argument made in this case might lead us to suppose, and grows out of *dicta* or rulings in particular cases in which the subject is not considered in all of its aspects. A large number of the cases are cited by Wright, J., in *McCramer* v. *Thompson*, 21 Iowa, 244, who thus refers to the variety of aspects in which the question is presented: "Some of these cases relate to official bonds, some to acceptances in blank, some to bonds of guardians or administrators, others to deeds delivered to third persons to be handed to the grantee

upon conditions, some where a name or names had been forged, others where certain names were inserted in the instruments but not signed to the same, some where the payee or obligee knew of the promise to the sureties, while in others they did not. Some make a distinction between negotiable papers and official bonds; others seem to overlook it. In some of them the paper was used for a purpose other than that contemplated, while many of them discuss at great length, fully reviewing the authorities, the liability of sureties who sign upon the faith and condition that other names are to be signed also, the payee having no knowledge of such condition or arrangement."

The text writers say that a bill or note, as well as deed, may be delivered as an escrow—that is, delivered to a third person to hold until a certain event happens, or certain conditions are complied with: 1 Dan. Neg. Inst., sec. 68; 1 Pars. N. & B., 51. The doctrine of delivery as an escrow originated with deeds by way of grant, and required the delivery to be to a third person other than the contracting parties to hold until something be done by the grantee: Perkins, 138; Coke Litt., 36 a; Gr. Cruise b, 4, p. 29. The instrument, in this view, was perfect and complete when delivered as an escrow, for it was to be delivered in that condition to the grantee when the act contemplated was performed. When the doctrine of delivery as an escrow was extended to sealed bonds or covenants, and still further to negotiable securities, it was found that the original restrictions would no longer meet the exigences of cases actually occurring. No

rule was better settled, or longer adhered to by the courts than that under the common law escrow, there could be no conditional delivery to the grantee or obligee. It was so held by this court in 1851, and applied to an ordinary bill single for money: *Johnson* v. *Branch,* 11 Hum., 521, citing the old text books, and several then recent decisions of other courts. The same train of reasoning would have forbidden the delivery of an instrument conditionally to a co-obligor, who could not be treated as a third person in the old sense of the law, and so it has been expressly held: *Willet* v. *Parker,* 2 Met., (Ky)., 608; *Deardorff* v. *Forseman,* 24 Ind., 481. But the rule is manifestly too technical for the attainment of the ends of justice, and this court has held, and there are decisions of other courts to the same effect, that a negotiable instrument may be delivered conditionally to a co-obligor (*Perry* v. *Patterson,* 5 Hum., 133), or to the payee or obligee himself: *Breeden* v. *Grigg,* 8 Baxt., 163; *Majors* v. *McNeily,* 7 Heis., 294. The modern tendency is to decide the rights of parties upon their merits and not upon technical rules: *Benton* v. *Martin,* 52 N. Y., 574.

At common law and under the statute of Anne the quality of negotiability is confined to unsealed notes or bills. If a seal be attached to an instrument, although it possess all the other requisites of a bill or note, the character of negotiability is lost, and it becomes a covenant governed by the rules affecting common law securities: 1 Dan. Neg. Inst., sec 31. In the case of such instruments no question of a *bona fide* holding

Jordan v. Jordan.

could arise except between the obligors and obligee. Any subsequent holder would stand in the shoes of the obligee. In this State, as in several other States, every bill, bond or note for money, whether sealed or not, was made negotiable by statute: Code, sec. 1957. And bonds with collateral conditions were made assignable but not negotiable: Code, sec. 1967. All official bonds stood, therefore, in relation to the question under consideration, and now stand as at common law, and the question of conditional delivery is the same whether the instrument be held by the obligee or an assignee. The abolishment of private seals would not affect the bonds in this respect, while it places money bonds in every respect on the footing of instruments unsealed. There can be no doubt that at one time the distinction between these two classes of instruments was deemed important upon the question of a conditional delivery. But, in reality, when the only point is whether the obligee of a bond or the payee of a note is bound by the condition, there can be no difference in principle. If an official bond would be void in the hands of the obligee because there had been a failure to comply with a condition precedent to its efficiency, a bond or note for money would be equally invalid in the hands of the payee for a like failure. The question in both cases would be, has there been a valid delivery?

The question has been very fully considered, and the authorities reviewed in two recent cases, *State* v. *Potter*, 63 Mo., 212, and *Deardorff* v. *Forseman*, 24 Ind., 481. In the first of these cases, the question

was whether a curator's official bond, perfect on its face, could be avoided, at the instance of a surety, upon the ground that he signed it under a conditional agreement made with the principal, to whom he entrusted the bond, that the latter was not to deliver it to the obligee until the signature of a certain other person was also obtained, and that the bond was delivered to the obligee, without notice of the condition, in violation of the agreement. In the second case, the question was whether a promissory note, perfect on its face, could be avoided, at the instance of the sureties, upon the ground that they signed it under a conditional agreement with the principal debtor, to whom the bond was entrusted by them, that the latter was not to deliver it to the payee until the signatures of several other specified persons were also obtained, and that the note was delivered to the payee, who had no notice of the condition, in violation of the agreement. The question, it will be seen, was precisely the same in each case, the suit in the one being by the obligee of the bond, and in the other by the payee of the note. And the decision was also the same, that the plaintiff was entitled to recovery on the instrument notwithstanding the defense. In the Indiana case the question was raised by demurrer to the plea, and upon the same ground as in the case before us.

It was clearly shown in the opinions delivered in these cases that in nearly all of the decisions in which a similar defense had been sustained, there was something on the face of the instrument sued on which showed that it was not complete, or some circumstance

to put the opposite party upon enquiry, or some evidence of knowledge on his part of the condition. In other cases the decisions were correct upon the facts found, and only a departure from principle in the *dicta* of the judges. Almost the only case directly in point to the contrary upon an official bond is *People* v. *Bostwick*, 32 N. Y., 445, and the correctness of that decision has been expressly questioned in the subsequent case of *Russell* v. *Freer*, 56 N. Y., 67, by the same eminent court. In support of the conclusion reached in the Missouri case upon official bonds are *Dair* v. *United States*, 16 Wall., 1; *State* v. *Peck*, 53 Me., 284; *Nash* v. *Fugate*, 24 Gratt., 202; *Outter* v. *Roberts*, 2 Neb., 637. And in accord with the decision in the suit upon a promissory note; *Willet* v. *Parker*, 2 Metc. (Ky.), 608; *Smith* v. *Moberly*, 10 B. Mon., 269; *Bonner* v. *Nelson*, 57 Ga., 433; *Merriam* v. *Rockwood*, 47 N. Y., 81; *Passumpsic Bank* v. *Goss*, 31 Vt., 315.

A substantial reason for the conclusion thus reached, outside of the technical objection that to constitute an escrow the delivery must be to a third person, is that a co-maker of a bond or note cannot act as the agent of the creditor in the execution of the note. The character of agent for one party and that of principal upon the other part are incompatible. The law cannot recognize such incongruous relations. On the other hand, the law makes the principal the agent of his sureties for the special purpose of delivering the instrument. As said by Ray, J., in the case of the *State* v. *Potter*: "The original contract is between the principal and the obligee. The compliance with the

contract is the delivery of the bond by the principal obligor to the obligee, duly executed by himself and his sureties. The contract between the principal and his sureties is that they will enable him to comply with his original contract. For this purpose they sign and deliver to him the instrument, that in the fulfilment of the original contract he may deliver it to the obligee. Now, is it not clear that, as the general purpose of the delivery by the sureties to the principal is that he may make a delivery to the obligee, no conditions imposed upon such delivery will bind the obligee unless they are known to him?" It is a case for the application of the ordinary principle of agency, that where the agent is clothed with apparent authority to do the act, he may bind the principal within the limits of that authority, whatever may have been his private instructions: *Smith* v. *Moberly*, 10 B. Mon., 266. If it were otherwise, as said by another court, "it would become necessary for banks, and equally for all persons, upon the offer of a note with sureties in the usual course of business, to call before them all the makers, and ascertain by personal enquiry whether it was 'all right,' and not subject to some side agreement or reservation in favor of some of the sureties, that might render it invalid as against them. Such a rule of law would not only contravene the well-established usages of business, but would surprise, if not shock, the judgment of the community upon this subject:" *Passumpsic Bank* v. *Goss*, 31 Vt., 315.

The comment of Judge Redfield, upon a review of the cases, is well warranted, that where there is nothing

on the face of the paper indicating that other co-sureties were expected to become parties, and nothing to put the obligee or payee on his guard before acceptance, the latter cannot be said to be in fault in any respect. And, on the other hand, the entrusting the bond to the principal, under these circumstances, makes the principal the agent of the surety to deliver the same to the obligee or payee, for such is the course of conducting such transactions.

This court had already reached the same result in the case of public official bonds: *Buford* v. *Cox*, 3 Lea, 518; *Amis* v. *Marks*, 3 Lea, 568. And in the last of these cases we said that even in the case of private obligations, since the abolishment of the use of seals, ignorance of the condition between the principal and surety where there was nothing on the face of the instrument to give notice, would protect a *bona fide* purchaser for value. All the authorities agree that the negotiability of the instrument operates in favor of the holder, because such instruments in their very nature are letters of credit, and become obligatory upon the maker if passed off to a *bona fide* holder before maturity and without notice: 1 Dan. Neg. Inst., sec. 68, 856. It would be strange if a more stringent rule were adopted in the case of negotiable paper than in the case of unnegotiable instruments. There is no warrant in our books for any such distinction. The language of Judge Turley, in *Perry* v. *Patterson*, 5 Hum., 133, if intended to convey the contrary idea, as insisted upon, which may well be doubted, was not called for by the facts of the case and was a mere dictum.

The learned and eminent counsel for the defendants in error thinks, he says, that it is impossible that any question of notice can arise on a negotiable instrument until it has passed out of the hands of the payee for a full consideration. But if so, the original party to a note could never be a *bona fide* holder, and would, of course, be in a worse situation than the obligee of an unnegotiable bond. The payee of a note, who receives it before maturity, without notice of any defect, having given for it his money, goods or credlt at the time, or incurred loss or sustained some liability therefor, is a holder in due course of trade: *Cherry* v. *Frost*, 7 Lea, 1. And the suit was between the payee and the makers of negotiable securities in *Passumpsic Bank* v. *Goss*, 31 Vt., 315; *Willet* v. *Parker*, 2 Metc., 608; *Deardorff* v. *Forseman*, 24 Ind., 481; *Smith* v. *Moberly*, 10 B. Mon., 269. And the holder of the bill of exchange in *Merritt* v. *Duncan*, 7 Heis., 156, was the original holder, the bill being drawn payable to the drawer's own order.

The judgment must be reversed, and judgment rendered here sustaining the plaintiff's demurrer to the defendant's pleas, and the cause remanded for another trial.