ALBERT MERRIAM, DEFENDANT IN REVIEW, *v.* JEFFERSON ROCKWOOD, PLAINTIFF IN REVIEW.

Where a surety signs and delivers to his principal a negotiable note, under a condition that it shall not be delivered to the payee, or negotiated elsewhere, until some other person shall also sign the same as co-surety, and there is nothing on the face of the paper indicating that any other co-surety is expected to become party to the instrument, and no fact is brought to the knowledge of the payee before he accepts the same, calculated to put him on his guard, or which should induce inquiry, in such case, the surety will be bound.

The surety places the instrument, perfect upon its face, and before it is due, in the hands of the proper person to pass it to the payee, and the law justly holds that the *apparent* authority, with which the surety has clothed him, shall be regarded as the *real* authority, and as the *condition* imposed upon the delivery was unknown to the purchaser of the paper, therefore the benefits of such condition shall not avail the surety.

ASSUMPSIT upon a promissory note. Plea the general issue. The note declared on is as follows:

NASHUA, June 13, 1861.

Ninety days after date, I promise to pay to the order of Albert Merriam, two hundred dollars, value received, payable at the Indian Head Bank, Nashua.

(Signed,)                          WM. F. YORKE.

And on the back, JEFFERSON ROCKWOOD.

It appeared in evidence that at the date of the note, Yorke and Rockwood resided in Nashua, N. H., and Merriam in Lowell, Mass. Merriam was introduced as a witness and testified that in a day or two after the date of the note, he received it by mail in a letter from Yorke with a request that he would take the note and let him have the money upon it; that he took the note, endorsed it and put it into the Appleton Bank, Lowell, as he was accustomed to do with all his time notes, drew his check upon the bank for the amount, discount out, and forwarded the money to Yorke; that at the maturity of the note he received notice of protest from said bank as endorsee, that he had previously received similar notes from Yorke having generally the endorsement of Rockwood,

but in one instance of another person, on which notes he had advanced to Yorke the money, sometimes taking it from his pocket and at other times drawing it from the bank where he did his business, the notes being endorsed by him and passed to his credit on his bank account; that he had no agreement or understanding either with Yorke or Rockwood that he was to endorse this or any of the previous notes, but understood that he was to let the money to Yorke upon the security of his and Rockwood's names and that his own endorsement upon the notes was for the purpose of transferring them to the bank that they might be entered upon his bank account and forwarded to the Indian Head Bank properly endorsed for collection.

Rockwood testified for the defence that he had signed several notes in this way before, and had seen some of them after they were taken up, and all those he had seen after they were paid had Merriam's endorsement upon them; that he never had any agreement or understanding with Merriam in reference to his endorsing this or any of the previous notes, but that when Yorke requested him to endorse this note he told him that Merriam was going to endorse it with him and get it discounted at a bank in Lowell for his (Yorke's) benefit, and he understood when he signed his name upon the back of it, that Merriam was in like manner to endorse it as co-surety with him for Yorke.

Yorke testified that he had no understanding or arrangement with Merriam in reference to his endorsing this or any of the preceding notes or procuring it to be discounted for him (Yorke)' and that he sent this, as he had the previous notes, to Merriam for him to let him (Yorke) have the money upon it, and he denied that it was understood between him and Rockwood that the note was to be sent to Merriam for him to endorse it and procure it to be discounted. There was other evidence contradicting Yorke in material parts of his testimony.

The defendant also testified that he was once in partnership with Yorke, but that the partnership had been dissolved when this note was given; that before this note was given he had repeatedly lent Yorke his name to raise money after the partnership was dissolved; that he had signed eight or ten notes and perhaps more for him after the dissolution; and that a good part of them went to the plaintiff; that Merriam's name was on all the former notes, which went into his hands, and were taken up by Yorke, and he, the defendant, was not called on to pay any of them.

It appeared that Yorke and Merriam were brothers-in-law.

The court instructed the jury that if the plaintiff and defendant were sureties together on the note for Yorke there could be no recovery in this suit; that if it was understood and agreed between the defendant and Yorke, when the note was made, that the plaintiff and defendant were to be sureties on the note for Yorke, and this was known to the plaintiff when he took the note; or, if the circumstances were such as should have put the plaintiff on inquiry to ascertain whether the parties signed as joint promissors or otherwise, though the plaintiff had no actual knowledge that the defendant signed as surety, the plaintiff could not recover.

That, in determining whether the plaintiff ought to have inquired, they should take into consideration the relationship and former dealings of the parties, and the fact that the note was not in the usual form of notes, in which the signers intend to be held as joint and several promissors, being signed by the defendant on the back and not at the bottom on the face.

The jury found a verdict for the defendant, which the plaintiff moves to set aside for error in the foregoing instructions.

The questions arising on the foregoing case are reserved for the consideration of the whole court.

*G. Y. Sawyer,* for plaintiff.

I.   The facts proved furnished no evidence to the jury of any ground upon which the plaintiff could be held to be put upon inquiry.

II.   If so, still the question whether the plaintiff was or not put upon inquiry was one to be determined by the court and not to be submitted to the jury.

*W. W. Bailey,* for defendant.

I.   The relation, in which the several parties to a promissory note stand to each other as between themselves, can be shown when material. *Maynard* v. *Fellows,* 43 N. H. 255, and cases therein cited; *Whitehouse* v. *Hanson,* 42 N. H. 9, and cases therein cited; *Boody* v. *Bartlett,* 42 N. H. 558. And is a question of fact for the jury as is assumed in most of the above cited cases.

II.   The question as to whether the plaintiff ought to have inquired was a preliminary one, upon which depended the plaintiff's being charged with knowledge of the agreement between Yorke and Rockwood, which the jury by their verdict found to have existed and was one of the questions of fact, which the jury had to consider in determining the relations of the several parties to this note, and the plaintiff gives no reason, nor cites any authority, why it should not have been submitted to the jury.

III.   By the verdict the jury found that Rockwood did sign as surety, and that the plaintiff ought to have inquired. Upon the first point the plaintiff makes no objection but what it was properly found. Upon the second point the plaintiff says in his brief, that the "*facts proved*" furnished no evidence to the jury of any ground for such finding. But the jury by their verdict say that the evidence submitted to them did furnish sufficient ground for such finding. The only questions now to be considered are upon the instructions of the court. As to whether the verdict was against evidence cannot now be considered, the case not having been drawn for that purpose, evidence upon that point not having been given in full. That the evidence considered under the instructions of the court was competent cannot well be doubted, especially

when the mere statement to the contrary is not supported by any reasons given or authorities cited. It is difficult to conceive in what way the instructions were injurious to the plaintiff.

NESMITH, J. The plaintiff Merriam brings his action of assumpsit against the defendant as signer of a certain promissory note originally drawn by one William F. Yorke, for $200, for value received, signed by defendant as joint promissor, and purporting to be made payable to the order of the plaintiff in 90 days from date, at the Indian Head Bank in Nashua. When the note was signed, the drawer and the defendant both resided in Nashua, and the note was forwarded by Yorke to the plaintiff, who resided at Lowell, who there raised the amount of the note and forwarded the funds to Yorke, who had the benefit of the same. No question is made upon the genuineness of the signatures of the parties to the note, nor upon the sufficiency of the demand upon the maker, &c. The plaintiff claims that he is entitled to recover, as the *bona fide* holder of the note, having advanced, as he says, in good faith, its value soon after its execution, and having purchased it, in the regular course of business, without notice of any defect, or any condition whatever tending to qualify the part liability of the defendant, Rockwood, as one of the signers of the same. The plaintiff, therefore, claims the benefit and protection of all the reasonable presumptions that the law throws around the innocent holder of negotiated paper for value. Under such circumstances, the law properly casts the burthen of impeaching the note, while in the hands of the plaintiff, upon the defendant. And the defendant accordingly alleges as his defence, that when he put his name on the back of this note, it was with the understanding and expectation, that plaintiff was also to be equally liable with himself, or that the plaintiff was to sign the note in like manner, as a *cosurety* with him for Yorke. Defendant says that he had such an agreement, or understanding, with the principal or drawer of the note, Yorke, but he does not claim that he ever had any such understanding or agreement with the plaintiff himself upon this subject.

Now, we understand such an agreement would avail the defendant, provided he is able to show that plaintiff had knowledge of its existence at the time he took the note. The rule, as stated by Parsons, 1 Prom. Notes, 232, is, that if a note be drawn with the intent that it shall be signed by several persons, and one or more of them sign it on the representation by the payee of the party, to whom it is to be given, or by an understanding with him that the others will sign it, and they do not, it is not valid against the actual signers, such note not being regarded as the one intended by the parties, and is in nature of a contract not completed, and in its effect operates as a fraud upon such as do sign it.

In the note, under the aforesaid text in Parsons, is found the case, *The Bank of Missouri* v. *Phillips,* 17 Missouri 29. The doctrine of this case is "that it was no defence for the endorser of a note, that he endorsed it upon the express condition, that it should also be endorsed by another person, where it does *not* appear that the endorsee *knew* the condition." So, in the case *Hill* v. *Sweetzer,* 5 N. H. 168, the de-

fendant agreed to sign a note as surety for the principal, together with one *K*, and the principal and defendant signed the note, but *K* refused, and the note was then delivered to the creditor without the knowledge of the defendant, but the creditor, Hill, was informed of the circumstances when he received the note. *Held*, that the defendant was not liable on the note, the attempt to charge him being under the facts of the case fraudulent. But, where a note payable to a bank was signed by the principal and one surety, an agreeement on the part of the principal with such surety, that he will procure another surety, which is not done before he proves the note to be discounted, constitutes no defence, unless the officers of the bank were cognizant of such agreement. *The Passumpsic Bank* v. *Goss*, 31 Vt. 315; *Pickering* v. *Burk*, 15 East. 38; 1 Parsons on Contracts, 44; *Dixon* v. *Dixon*, 3 Vt. 450; *Haskins* v. *Lombard*, 16 Maine 140; *Smith* v. *Moberly*, 10 B. Monroe 266.

In *Deardorf* v. *Foresman*, recently settled in Indiana, 5 Law Reg., 551, July, 1866, the court lays down the general doctrine "that if a surety signs and delivers to his principal an instrument perfect upon its face, with a condition that it shall not be delivered to the obligee, payee, or grantee, until some other persons, who are agreed upon, shall execute the same, and the principal delivers the instrument without regard to the condition, and the obligee, payee, or grantee has no knowledge of the condition, the delivery will bind the surety. In this case, the authorities bearing on this point are collected, and many of them ably commented upon by Justice Ray, who, in that case, follows out the opinion of Justice Redfield, as expressed in his review of Chief Justice Appleton's opinion in the case *York Insurance Company* v. *Brooks*, settled in 1864, *vide* May Law Reg., p. 402, 1864. Chief Justice Redfield says that "it seems to us upon principle, that where there is nothing upon the face of the paper, indicating that other *co-sureties* were expected to become parties to the instrument, and no fact is brought to the knowledge of the obligee, or payee, before he accepts the instrument calculated to put him on his guard, in regard to that *point*, and which would naturally have led a prudent man interested in the opposite direction to have made inquiry before accepting the security, the fault cannot be said to rest to any extent upon the obligee or payee. And, on the other hand, where the surety trusts the bond to the principal obligor, *in perfect form*, with his own name attached as surety, and nothing upon the paper to indicate that any others are expected to sign the instrument in order to give it full validity against all the parties, he makes such principal his *agent*, to *deliver the same to the obligee*, because such is the natural and ordinary course of conducting such transactions, and if the principal under such circumstances gives any assurances to the *surety* in regard to procuring other *co-sureties*, or performing any other condition before he delivers the bond, or instrument, and which he fails to perform, the surety, giving confidence to such *assurances*, must stand the hazard of their performance, and cannot implicate the obligee in any responsibility in the matter, unless he is guilty of *fraud* or rashness in accepting the security." He observes further, that, in a majority of

American cases, it has been held, that in order to put the obligee *upon inquiry even,* some indication upon the *face* of the paper, such as the insertion of other names in the body of the bond, instrument, or some memorandum attached to the signature of the surety, indicating the condition upon which he signed, *should exist,* or some notice *in pais* to the obligee, which might fairly be regarded as equivalent. And, that without this, the obligee is not chargeable with any positive default, and if there has been default on the part of the obligor, the bond may be enforced.

It is to be here remarked, that the defendant having been unable from his own knowledge, or that of Yorke, the drawer of the note, or from plaintiff himself, to show the fact that plaintiff had agreed to become equally liable with himself as an original co-surety, he asks that the existence of such contract may be inferred from circumstances surrounding the case; first, from the course of dealing between the parties to the note as derived from the fact that some other eight or ten notes, drawn in like manner to this by Yorke, and endorsed by defendant, had been made payable and forwarded to plaintiff at Lowell, and plaintiff had either advanced his own funds thereon, or raised them at the bank where he did his business for the use of Yorke. The defendant testified, that after some of these notes had been taken up, he had seen the plaintiff's, (*Merriam's*) name endorsed thereon. The appearance of plaintiff's name endorsed on the notes would consist with the defendant's theory, that it was placed there pursuant to the original agreement, as set up by defendant. But the endorsement also consists with plaintiff's explanation of the case. That he was to raise the money for Yorke, upon the strength of the *security* furnished by Yorke's and Rockwood's names, and that when he had not the funds of his own on hand to advance, he was obliged to pass the notes into the Appleton Bank, where he did his bank business, and, of course, he was required to endorse his own name on the notes to transfer the property in the notes, and to give security to the bank; or, the plaintiff's endorsement consisted with the usage of simply collecting the note by the Appleton Bank at the request of the Nashua Bank, through the aid or intervention of the cashier's agency. Hence, we find nothing definite or conclusive in either theory.

Again, it is said the plaintiff and Yorke were brothers-in-law. This fact might tend to incline the plaintiff to assist the defendant, and perhaps no stronger inference ought to be derived from this relationship, than from the other fact, that the defendant and Yorke had for many years been partners in business. The bonds of relationship, and the intimacies contracted from a long partnership may have been strong, or they may have been both quite weak, or both equally strong and binding, but still furnishing no satisfactory clue to the contract set up by the defendant. It may be properly admitted that the position in which Yorke stood, in reference to the other parties to the note, did afford some reason why he should apply to them for assistance, rather than to a stranger.

The court also told the jury, among other things, that if the circumstances were such as should have put the plaintiff on inquiry to ascer-

tain whether the parties signed as joint promissors, or otherwise, though the plaintiff had no *actual knowledge* that the defendant signed as surety, the plaintiff could not recover.    That in determining whether the plaintiff ought to have inquired, they should take into consideration the relationship and former dealings of the parties, and the fact that the note was not in the usual form of notes, in which the signers intend to be held, as joint and several promissors, being signed on the back, and not at the bottom or face.    As to the latter point, it is the settled doctrine, or the general rule, that the law presumes that the parties to a promissory note stand toward each other in the relations in which their signatures appear, but whenever it is necessary for the purposes of justice, the truth may be shown to be otherwise.    *Whitehouse* v. *Hanson*, 42 N. H. 9 ; *Boody* v. *Bartlett*, 42 N. H. 558 ; *Maynard* v. *Fellows*, 43 N. H. 258 ; *Martin* v. *Boyd*, 11 N. H. 385.    In the latter case it is also held, that if it would be productive of injustice to others, who have become holders of the paper, or who have acquired other rights dependent upon the apparent relations of the parties in ignorance of the facts, then the general presumption cannot be repelled by testimony.

In the case before us, the defendant, according to the paper, stands in the place of a regular original promissor upon the note, and is presumed to be there at the request of the principal, or maker, Yorke.    *Martin* v. *Boyd, ante.*

In *Nichols* v. *Parsons*, 6 N. H. 33, where the question was raised whether the plaintiff, the purchaser of the note, was bound to have inquired whether one of the signers on it was in fact surety or not, the word surety not being written against his name, Justice Richardson there remarks that the plaintiff cannot be presumed to have inquired, or to have learned, in what character the signers of the note actually did sign, because that was a circumstance with which he had no concern. If sureties wish to have the *character* in which they put their names to notes *known*, they must sign as *sureties*.    If they neglect to do this, no person is bound under such circumstances to inquire, nor can be presumed to know in what character they sign notes.

In the case before us, we do not see how or why the plaintiff should have been put upon inquiry by anything appearing on the face of the paper.    It was not *overdue*.    There was no qualification or limitation placed against the name of the defendant.    It was in his power to have affixed such limitation if he had expected the benefit of it afterwards. The plaintiff, therefore, having received the paper, and paid full value therefor, without notice being proved of any fraud or defect in it, is only bound to treat the defendant as the joint promissor upon the note, and to establish his liability accordingly.

In England, it is held that any fraud practiced upon the surety will invalidate the obligation.    *Pidcock* v. *Bishop*, 3 Barnwell & Cresswell 605.    Justice Redfield says : The same principle extends to promissory notes and other contracts not negotiable, or to negotiable contracts before negotiation.    *Aude* v. *Dixon*, 5 Eng. L. & Eq. 512 ; *Lloyd* v. *Howard*, 1 Eng. L. & Eq. 227 ; *Palmer* v. *Richards*, 1 Eng. L.

& Eq. 520; *Leaf* v. *Gibbs*, 4 C. & Payne 466. But in regard to negotiable instruments, which are executed for the sake of raising money in the market, and especially after they have been once negotiated, the rule is held otherwise, and the surety, or any other party having executed the paper, and entrusted it to others, is regarded as having given them power to negotiate it. *Passumpsic Bank* v. *Goss*, *ante*, 31 Vt. 315; *Davis* v. *Lang*, 8 N. H. 224. The surety must run the risk of the fraud of his own agent, unless there is something upon the paper to show that other parties were expected to sign with him.

In the United States Court, in the case *Goodman* v. *Symonds*, 20 Howard, 343, it is said, if the defect or infirmity in the title to the instrument, appears on its face at the time of the transfer, the question, whether the person who took it had notice, or not, is generally a question of construction for the court, but that where it is proposed to impeach the title of the holder by proof of facts and circumstances outside of the instrument itself, the defendant is bound to prove notice or a knowledge of such facts, and mere want of care and caution is not sufficient. 2 Parsons on Notes, ch. 9, p. 270, and thenceforward; *Crosby* v. *Grant*, 36 N. H. 273.

From our investigation of the case, we come to the conclusion, that the plaintiff was prejudiced by the instruction to the jury, that the facts proved by defendant furnished sufficient evidence to put plaintiff upon inquiry in manner and form as suggested by the court. And, therefore, there should be

*A new trial.*