THE STATE on the Relation of THE BOARD OF COMMISSIONERS OF THE COUNTY OF LAPORTE *v.* VAN PELT.

Debt upon the bond of a county agent. The declaration alleged that the agent was dead and that the defendant was surety on the bond. The fifth count alleged that *D.*, the county agent, executed his official bond with *P., B.*, and *E.*, as sureties; that, afterwards, &c., *D.* desired to have *E.* released from his liability, and *V.*, the defendant, substituted in his place; that proceedings were had before the board of commissioners for that purpose; that *E.* was released, with the consent of *D.*, and without the knowledge or consent of *P.* and *B.*; and that *V.* then and there executed said bond. Breach—non-payment by *D.* of the money received by him by virtue of his office. *Held*, that this count was good; that, if the erasure and insertion was made without the knowledge or consent of *P.* and *B.*, they were discharged, but that the bond was valid against *D.* and *V.* *Held*, also, that there was a sufficient averment, in substance, that the alteration was approved by the board.

The first plea to this count states that, at the time the name of *E.* was struck out, and when the defendant executed the bond, he did not know that *E.'s* name was struck out; and that *E.* was released without the knowledge or consent of *V.* and *B.* *Held*, that this plea was bad; and that such release of *E.* did not affect the defendant's liability.

There were several pleas to the breaches assigned in this count, which say, in substance, that the money, &c., did not come into the hands of the agent, after the defendant's execution of the bond. *Held*, that the pleas were bad because they gave no sufficient reason for the agent's failure, after the defendant's execution of the bond, to pay over the money, &c.

A party is bound, in the absence of any misrepresentation of facts, by the legal effect of his contract, and he is presumed to know what will be its legal effect, and to intend that it shall have that effect.

*Thursday,*
*February 1,*
*1849.*

ERROR to the *Laporte* Circuit Court.

BLACKFORD, J.—This was an action of debt by the plaintiff in error on the bond of a county agent. The

declaration alleges that the agent is dead, and that the defendant is a surety in the bond.

There are five counts, the first four of which were adjudged bad on demurrer, and have been correctly abandoned by the plaintiff.

To the fifth count there are fourteen pleas. The pleading as to the 1st, 2d, 3d, 4th, and 6th pleas, led to issues of law, which issues were decided in favor of the defendant. The 7th, 8th, 9th, 10th, and 11th pleas, were adjudged bad on .demurrer. The pleading as to the 5th, 12th, 13th, and 14th pleas, led to issues of fact.

The decision of the Court on the issues of law growing out of the 1st, 2d, 3d, 4th, and 6th pleas being against the plaintiff, and he taking no further steps as to that part of the case, final judgment was rendered for the defendant.

This case presents the following questions: 1. Is the fifth count sufficient? 2. Are the 1st, 2d, 3d, 4th, and 6th pleas, valid? 3. Were the demurrers to the 7th, 8th, 9th, 10th, and 11th pleas rightly sustained?

The fifth. count is to the following effect: That on the 4th of *July*, 1836, at, &c., the board of commissioners of *Laporte* county, then being in session for that purpose, duly appointed one *David Dinwiddie* to be county agent for said county, in the place of *Charles Ives*, deceased, who, before that time, had been county agent; that, thereupon, afterwards, on the 23d of *July*, in said year, at, &c., said *Dinwiddie*, since deceased, with one *David Evans*, since deceased, one *Adam G. Polke*, and one *Andrew Burnside*, as sureties for said *Dinwiddie*, made their certain writing obligatory of that date, &c., by which they, the said *Dinwiddie*, *Evans*, *Polke*, and *Burnside*, jointly and severally acknowledged themselves to be held and firmly bound unto the state of *Indiana* in the sum of 4,000 dollars, which writing obligatory was conditioned for the faithful discharge, by *Dinwiddie*, of his duties as such county agent, and for the payment over of all moneys that might come to his hands, &c., and was filed in the clerk's office and approved by the board of commis-

sioners, &c.; that afterwards, on the 4th of *January*, 1837, at, &c., the said *Dinwiddie* being desirous to have said *Evans* released from all liability as one of the sureties on said bond, and to have the defendant substituted in the stead of said *Evans*, for that purpose applied to the board of commissioners of said county, then in session, and such proceedings were thereupon had before said board, that, afterwards, to-wit, on the day and year aforesaid, at, &c., the said *Evans* was, with the knowledge, approbation, and consent of *Dinwiddie* and of the defendant, but without the knowledge or consent of *Polke* and *Burnside*, released from all liability on said bond, and his name struck therefrom; that the defendant, then and there, with the knowledge and consent of *Dinwiddie* as aforesaid, executed said bond, which thereby then and there became the bond of *Dinwiddie* and the defendant, by which they, *Dinwiddie* and the defendant, jointly and severally acknowledged themselves to be held and firmly bound in the sum of 4,000 dollars, payable and conditioned as aforesaid. The count then alleges as a breach, that though *Dinwiddie*, afterwards, to-wit, on the day and year last aforesaid, at, &c., entered upon the duties of said office of county agent, and though while he was acting as such agent, to-wit, on the day and year last aforesaid, at, &c., divers large sums of money were received by him, by virtue of his said office, from divers persons, to-wit, from one *Elisha Mahew* the sum of 65 dollars, &c., yet that he, *Dinwiddie*, did not pay over the same, &c. Several other breaches, similar to that just stated, are assigned in the fifth count. This count concludes by saying, that, by virtue of the said several breaches, the bond became forfeited, &c.

This fifth count is objected to on account of the manner in which the bond is alleged to have been executed by the defendant; but the objection is unfounded. If, as is alleged, *Dinwiddie* and the defendant, and the board of commissioners agreed that *Evans's* name in the bond should be erased and the defendant's inserted in its place; and if, as is also alleged, such erasure and insertion were

accordingly made, the bond was, at all events, valid against *Dinwiddie* and the defendant; and if, as is further alleged, the alteration was made without the knowledge or con- sent of *Polke* and *Burnside*, they (*Polke* and *Burnside*) were discharged from the bond, and the same became the bond of *Dinwiddie* and the defendant alone.

It is also objected to this count, that the bond described in it was not authorized by law, and that it is not shown that the bond, after being executed by the defendant, was accepted by the board of commissioners. As to the first of these objections, we need only to refer to the act of 1831, which required such bonds to be given. R. C. 1831, p. 461. As to the last objection, the count states that the bond, when first given in 1836, was approved by the board of commissioners. It also alleges that *Dinwiddie*, desirous to have the defendant's name inserted in the bond instead of *Evans's*, applied for that purpose to the board of commissioners then in session, and that such proceedings were thereupon had before said board, that, afterwards, to-wit, on, &c., at, &c., the change was made. That is a sufficient averment, in substance, that the alteration of the bond was approved of by the board.

We consider, therefore, that the fifth count is unobjectionable.

The next question is as to the validity of the 1st, 2d, 3d, 4th, and 6th pleas to the fifth count, which pleas are all sworn to.

The first plea states, that, at the time when the name of *Evans* was struck out and he was released, and when the defendant executed the bond, he, the defendant, did not know, or believe, or suspect, that *Evans's* name was struck out, and that he, (*Evans*) was released, without the knowledge or consent of *Polke* and *Burnside*.

The second plea is similar to the first. These first two pleas are clearly bad. The circumstance that the defendant, when he executed the bond, did not know, believe, or suspect, that the striking out of *Evans's* name, and *Evans's* release, were without the knowledge or consent of *Polke* and *Burnside*, does not affect the defendant's liability. If

he did not wish to be bound unless as a co-obligor with *Polke* and *Burnside*, he should have ascertained, before he executed the bond, whether or not they had agreed to the alteration, and upon finding that they had not, he should have declined to execute it.

The third plea, besides the matter contained in the first, states that when the defendant executed the bond, he supposed, believed, and understood that, by executing it, he was to become bound, jointly and severally, with *Dinwiddie, Polke*, and *Burnside*, and not with *Dinwiddie* alone. This plea is also bad. It was of no consequence what the defendant supposed, believed, or understood, as to the effect of his executing the bond. He must be bound, in the absence of any misrepresentation of facts, by the legal effect of his contract.

The fourth plea, in addition to what is contained in the first, says, that when the defendant executed the bond, it was understood and intended, both by the defendant and the board of commissioners, that, by the execution of the bond, the defendant was to become bound, according to the terms thereof, jointly and severally, with *Dinwiddie, Polke*, and *Burnside*, and not with *Dinwiddie* alone.

The sixth plea is similar to the fourth, except that it omits what is contained in the first plea.

These pleas (the 4th and 6th) go further than the third. They allege that, when the defendant executed the bond, it was understood and intended, not only by the defendant, but by the board of commissioners also, that the defendant was only to become bound as alleged in the third plea. We think, however, that these pleas are also bad. The parties to a transaction are presumed to know what will be its legal effect, and to intend that it shall have that effect. In the case before us, the legal result of the erasure and insertion aforesaid, under the circumstances of the case, was to release *Polke* and *Burnside* from the bond, and to cause it to be the bond of the defendant and *Dinwiddie* alone; and the defendant cannot be permitted to aver that those acts were not intended to produce that effect.

The 7th, 8th, 9th, 10th and 11th pleas remain to be examined. These pleas are to the breaches assigned in the fifth count, which breaches are, substantially, that the county agent had received money, &c., by virtue of his office, which he had failed to pay over, &c. The pleas say, in substance, that said money, &c., did not come into the agent's hands after the defendant's execution of the bond. These pleas are bad, because they give no sufficient reason for the agent's failure, after the defendant's execution of the bond, to pay over the money, &c. It was not material when the agent received the money, &c. If, after the defendant executed the bond, the agent having money, &c., in his hands as alleged, failed to pay over the same, &c., the bond was forfeited.

*Per Curiam.* — The judgment is reversed with costs. Cause remanded, with leave to the defendant to amend his 1st, 2d, 3d, 4th, and 6th pleas, &c.

*J. H. Bradley* and *J. Bradley*, for the plaintiff.

*J. B. Niles*, for the defendant.