THE STATE, on the Relation of GRISWOLD, Auditor, *v.* BLAIR
and Others.

ESTOPPEL.—*Surety.*—Where a surety signs an instrument apparently perfect
and complete, and hands it to his principal, to be finally delivered to the
obligee, only when it shall have been executed by certain others as co-sure-
ties, and the principal, without complying with the condition, delivers the
instrument to the obligee, who has no notice, actual or constructive, of the
condition, and takes the instrument in good faith, such surety will be
bound.

COUNTY TREASURER.—*Official Bond.—Statute Construed.*—The act of March
6th, 1865 (Acts 1865, p. 62), providing that the bond of a county treasu-
rer "shall be signed and acknowledged by said treasurer and his sureties
*in the presence of*" *the county commissioners,* does not require an actual
writing of the names in the presence of the commissioners; if a name has
been previously written, even by a stranger, the adoption of it as the par-
ty's signature is a signing then and there within the meaning of the stat-
ute.

SAME.—*Directory Statute.*—This provision of the statute is merely directory;
though the commissioners may and should reject the bond if the provision
be not complied with, yet such compliance is not essential to the validity
of the bond as against the sureties.

SAME.—*Alteration of Written Instrument.*—Where a person executes a county
treasurer's official bond as surety, intending to be bound as co-surety with
another who has before signed the bond, but who before delivery erases his
name without the knowledge of the second surety, the latter is not bound.

SAME.—*Evidence.*—In a suit upon a county treasurer's official bond against
the principal and his sureties, the defense of the sureties being, in effect,
that the bond sued on was not their deed, the plaintiff, after proving the
genuineness of the signatures of the defendants, offered the bond in evi-
dence, but the court refused to admit it as against the sureties.
*Held,* that this ruling was error.

APPEAL from the Noble Circuit Court.

FRAZER, C. J.—This was a suit upon a county treasurer's
bond against the principal and his sureties, the breach as-
signed being a failure of the officer to pay to his successor
in office moneys of the county in his hands as such treas-
urer.   There was judgment against the principal for twenty
thousand eight hundred and twenty-six dollars and forty-
two cents, but in favor of his sureties for costs. The plaint-
iff appeals, seeking to reverse the judgment rendered below
in favor of the sureties.

The second, third, seventh, eighth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, and sixteenth paragraphs of the answer were severally held to be good on demurrer, and each of these rulings is assigned for error.

The consideration of the sufficiency of all the paragraphs of the answer drawn into controversy here, except the fourteenth, fifteenth, and sixteenth, involves the principal question which was before us in *Deardorff* v. *Foresman*, 24 Ind. 481. In that case and subsequent ones that have required it, we gave the subject the most careful consideration. See *Webb* v. *Baird*, 27 Ind. 368; *The State* v. *Pepper*, 31 Ind. 76.

The conclusion reached was, that where a surety signs an instrument apparently perfect and complete, and hands it to his principal, to be finally delivered to the obligee, only when it shall be executed by certain others as co-sureties, and the principal, without complying with the condition, delivers the instrument to the obligee, who has no notice, actual or constructive, of the condition, and takes it in good faith, the surety will be bound. In the light of this proposition the second and eighth paragraphs of the answer must be deemed bad; and we are of opinion that the court below erred in overruling the demurrers to them.

But some of the paragraphs go a little further. The third involves the question whether an acknowledgment of an official bond of a county treasurer is necessary to make the bond valid under the statute. The fourteenth and fifteenth paragraphs involve the same and no other question.

The argument is plausible that a compliance with the act of March 6th, 1865 (Acts 1865, p. 62), was necessary to its validity as a statutory bond. The requirement of the act is, that the bond shall be signed and acknowledged by the treasurer and his sureties in the presence of the county commissioners. Now, undoubtedly, the commissioners might, and, indeed, should have refused to approve the bond until this was done. The *signing* required in their presence cannot, however, be held to mean an actual writing of their names there. If the name had been previ-

ously written, even by a stranger, its adoption then as the party's signature would be a signing then and there within the meaning of the statute. Such circumstances were always held to be a signing, and cannot be less in consequence of the statute.

The question is, whether this statute is mandatory, or merely directory; if the former, then the bond was not such as the statute required, and not valid by the statute; if the latter, then the failure to comply with the directions does not affect the validity of the bond.

The circumstances which gave rise to this statute may aid in its construction. Before its enactment, no such precautions as it requires were necessary to the validity of the bond; nor does it declare that a disregard of them shall now be fatal to it. An opinion had been pronounced by this court in *Pepper* v. *The State*, 22 Ind. 399, which, if adhered to, would put all the public revenues in imminent peril. That ruling was to the effect that the surety of an officer executing an official bond upon the faith of a promise by the principal that it would be executed by another as surety, and allowing the principal to have custody of the bond, would be discharged if the bond were tendered by the principal, and in good faith accepted, without being executed by that other. It was merely to remedy the mischiefs to the public which were apprehended in consequence of the law as thus declared, and such as might ensue from the forgery of sureties' names, that the statute in question was enacted. That mischief was the loss of public moneys by sureties of officers avoiding liability as such upon official bonds. The remedy was not, certainly, to devise additional methods by which liability might be avoided, but to close, for the future, the door of escape already existing, or supposed to exist; not to relieve persons becoming sureties of county treasurers, but to protect the people from the defalcations of those officers. It was not for the benefit of the surety that he was required in person to acknowledge the bond before the commissioners, but it was to prevent him

from afterwards making any question concerning the genuineness of his signature or the validity of the instrument as against him.

It is a rule of common sense, as well as a familiar principle of law, that statutes shall, if possible, be so construed as to accomplish the end which the legislature had in view, and not so as to defeat it; and remedial statutes must be liberally construed to advance the remedy for the mischief for the cure whereof they were enacted. Guided by these established doctrines, we cannot hold an observance of the directions of this statute essential to the validity of the bond as against these sureties.

*Hardin* v. *Owings*, 1 Bibb, 214, is relied on by the appellees. That case involved no question as to the liability of a surety. The question was, whether an appeal should be dismissed, the appeal bond required not having been executed as the statute prescribed, and it was ruled in the affirmative. Indeed, there can be no question as to the correctness of that decision. It is well supported by both reason and authority.

We are of opinion that the third, fourteenth, and fifteenth paragraphs of the answer were bad.

The seventh, eleventh, twelfth, and thirteenth paragraphs of the answer involve the question whether a person executing the bond as surety, intending to be bound as co-surety with another who has before signed the bond, but who, before delivery, erases his name without the knowledge of the second surety, is nevertheless bound.

The question is plain. A party is bound only by the written contract into which he enters. A material alteration thereof afterwards, without his consent, discharges him, for it is no longer his contract. Signing a bond already signed by A, is a written engagement to become a co-obligor with A. Such is the legal effect of the instrument, and it cannot be changed without making a different contract, by which one will not be bound unless he consent to it. *The State* v. *Vanpelt*, 1 Ind. 304; *Howe* v. *Peabody*, 2 Gray, 556;

*Smith* v. *United States*, 2 Wall. 219; *Warring* v. *Williams*, 8 Pick. 326; *The State* v. *Polke*, 7 Blackf. 27; *Richmond Manuf'g Co.* v. *Davis*, 7 Blackf. 412; *Hart* v. *Clouser*, 30 Ind. 210.

The sixteeenth paragraph of the answer is clearly bad. A multitude of words are employed in it, but they fail to aver, as appears to us on careful scrutiny, the one fact essential to its sufficiency, viz., that Stough did not appear before the commissioners and acknowledge the bond.

The reply was in seventy-six paragraphs, and covers forty pages of the transcript before us. Three paragraphs, at most, would, we think, have served every purpose of the most abundant caution to form the issues which were thus tendered. The judges presiding on the circuit should not allow the records of causes to be thus incumbered. Their power to prevent it is ample, and in palpable cases its exercise should not be withheld.

To seventy-five of these paragraphs of the reply demurrers were sustained, and that is assigned for error. But the counsel for the appellant have not presented the questions thus involved in the manner required by the tenth rule of this court, and we are thereby relieved from their particular consideration.

The remaining paragraph of the reply was the general denial; and upon the issues thus made there was a trial and verdict against Blair, the principal, but in favor of the sureties. There was judgment accordingly, after an unsuccessful motion by the plaintiff for a new trial.

After proving the genuineness of the signatures of the defendants to the bond, the plaintiff offered it in evidence, but the court refused to let it go in, except as against Blair, the principal. We think that this was error. We regard all the defenses which were pleaded as being purely of a negative character—*non est factum*—though argumentative in form. No reply was necessary to them therefore, their legal effect being that the bond sued on was not the deed of the several sureties. The form of the defense pleaded

could not require greater proof from the plaintiff to admit the bond in evidence than if the defense pleaded had been *non est factum* in the ·common form of that plea.

If, however, they are to be regarded as affirmative ·defenses, then, ·certainly, the plaintiff was not bound to disprove them before the bond could go in evidence.

Judgment in favor of the appellees reversed, with costs. Cause remanded, with directions to sustain the demurrers to the second, third, eighth, fourteenth, fifteenth, and sixteenth paragraphs of the answer, and with further directions to permit all the parties to amend their pleadings.

*A. Ellison, W. A. Woods,* and *A. A. Chapin,* for appellant. *J. L. Worden, J. Morris,* ·and *J. I. Best,* for appellees.·