JOHN B. JOHNSON *et. al.*, V. LANY WEATHERWAX.

1. BOND, *in Attachment Cases.* A forthcoming bond in attachment, running to the officer and not to the plaintiff in the attachment, is valid.

2. BOND—*Sureties; Execution; Liability.* Where the names of two as sureties appear in the body of a bond, and one of them signs the same in the presence, and leaves it in the possession of, the obligee, without saying anything restricting his liability, no presumption arises that such bond was not to be considered binding upon him until the signature of the other surety had been obtained.

*Error from Franklin District Court.*

ACTION on a delivery or forthcoming bond. *Weatherwax* brought suit against *Johnson,* and sued out an order of attachment, which was executed by the sheriff of Franklin county. The attached property consisted of a lot of cattle, appraised at $442. To release this property *Johnson* executed to and in favor of the sheriff a forthcoming bond, with *Thompson Jones,* as surety. Final judgment was rendered against *Johnson,* for $307.08 and costs, and for the sale of the attached property, etc. Both *Johnson* and *Jones* refused to deliver the cattle to the sheriff, and the judgment remaining unsatisfied, *Weatherwax* brought this suit on said bond against *Johnson* and *Jones. Johnson* made no defense. *Jones* claimed that his execution of the bond was conditional. The action was tried at the August Term 1871, and the plaintiff had judgment against both the defendants, for the amount of the former judgment, interest and costs, and costs of this suit. A new trial was refused, and *Johnson* and *Jones* bring the case here on error.

No briefs on file.

*J. W. Deford,* for plaintiffs in error.

*H. P. Welsh,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Is a forthcoming bond in attachment, running to the officer and not to the plaintiff in the attachment, void? This is the first and substantial question in the case.

The statute provides that it shall run to the plaintiff: Code, § 199, (Gen. Stat., p. 666.) This therefore does not conform to the statute, and cannot be supported as a statutory bond. But it does not follow that this bond has no validity. It may be good as a common-law obligation. It is good as such, unless it contravene public policy, or violate a statute: *Shepherd v. Collins,* 12 Iowa, 570; *Garretson v. Reeder,* 23 Iowa, 21; *Barnes v. Webster,* 16 Mo., 258; *Morse v. Hodsden,* 6 Mass., 314; *Bunall v. Acker,* 23 Wend., 606; *Lewis v. Stout,* 22 Wis., 234. In this last case the bond in controversy ran to the governor, and not to the state, as it was claimed it should. The court uses this language upon that question: "But if I am wrong in this, and the bond should as is contended, have been executed to the state instead of the governor, then, though it is not good as a statutory bond, it is nevertheless binding as a voluntary obligation, upon which an action at common law may be maintained. The authorities on this point are too numerous to be cited, and as is observed in one of them, there is no case to be found contradicting the position." The case from 23 Iowa, 21, was on a forthcoming bond in attachment. The condition did not conform to the statute. The court says: "Why not valid as a common-law obligation? The sheriff had lawful possession of property upon which the plaintiff had a valid lien. Defendants wished it released. To effect this they voluntarily offered to substitute their joint liability in the place of the property. To this the sheriff agreed. Defendants have received the consideration for their undertaking, viz., the release of the property. No law or no public policy was violated by the giving and accepting of this bond. And defendants having received the consideration therefor, must be held liable if they have not kept its conditions." Could language be used more appropriate to the facts of this case? Both the officer and the defendants were parties competent to contract. Ample consideration was received for their obligation, namely, the release of the property from the possession of the officer. The contract of the officer involved no derelic-

tion of duty. It was not a contract to omit the performance of some duty, as was the case in *Cole, Adm'r. v. Parker,* 7 Iowa, 168, cited by counsel for plaintiffs in error; nor to do some act forbidden by statute, as in the case of *Winter v. Kinney,* 1 Comst., 365. The officer had levied the attachment, had possession of the property, and thereby security to the plaintiff for such judgment as he might thereafter obtain. What further duty did he owe to the plaintiff? Only to preserve the property, or its equivalent in value, to answer the judgment. He surrenders the possession of that property to the defendant, for that which he accepts as an equivalent. The plaintiff also accepts it as an equivalent. Can the defendants now be heard to deny that it is an equivalent? In another view, he places this property in the possession of defendants, as he would store it in a warehouse, (if merchandise,) or place it with a farmer, (if cattle.) Could the warehouseman or the farmer refuse to deliver it when demanded? and if they did refuse, and converted the property, could they not be compelled to pay the value? But we need not pursue this farther. Both reason and authority unite in refusing to allow these defendants to reap the benefits of their contract, and then deny its validity.

II. A second important question arises on the instructions. John B. Johnson was principal in this bond, and Thompson Jones surety. In the body of the bond appeared the names of "John B. Johnson, Thompson Jones and John R. Davis." Jones claimed that he signed it only upon condition that Davis should also sign as co-surety. Davis did not sign. Hence Jones insisted that he was not bound. The bond was signed by both Johnson and Jones in the presence of the obligee, the sheriff. He denied that there was any such condition, and testified that Jones executed the bond absolutely, and without any agreement or stipulation whatever. Upon these facts three questions arise: First, Was the instrument so incomplete that it required the signature of Davis to make it a valid instrument? Second, Does the presence of Davis' name in the body of the instrument raise any presumption that it was

not to be binding on either until signed by Davis? And *Third*, If Jones made any such condition, what effect did it have on his liability?

Upon the first question there is little room for doubt. Such an instrument is valid and binding upon the party signing, if executed by him absolutely and without conditions. So the district judge charged, and his charge was correct. No authorities need to be cited to sustain this proposition.

Upon the second question the learned judge charged that " the mere fact that Davis' name is written in the body of the bond raises no presumption that Jones signed it upon condition that Davis would sign it." In other words, if Jones signed the bond, saying nothing, the law presumes that he intended thereby to bind himself absolutely and not conditionally. There is some confusion and contradiction between the authorities upon this question; but taking the instruction as applied to the facts in this case, we think it correct. The bond was executed by Jones in the presence of the obligee, the sheriff. Now if under these circumstances he executed the bond without saying anything, it seems to us that the law will hold that he intended thereby to create an absolute obligation. Execution includes two things, signing and delivering. A bond may be signed by a party, and never become binding because never delivered. Here, without any dispute, the bond was signed by Jones in the presence and left in the possession of the sheriff. Then, as it seems to us, no presumption can arise to avoid liability. Something must be shown by the obligor or he will be held bound. In *Parker v. Bradley* 2 Hill, 586, Cowen, J., says : " It has I see been holden in a late case that a signer cannot insist on a contrary intent, as qualifying the execution, unless it appear he declared at the time of signing that he would not be bound without the signatures of others named in the bond. If he execute it generally without such declaration he shall be holden, though he stand alone." See also *Haskins v. Lombard,* 4 Shepley, 143 ; *Johnson v. Baker,* 4 Barn. & Ald., 440 ; *Cutter v. Whit-*

*timore,* 10 Mass., 442; *Scott v. Whipple,* 5 Green, 336.  In *Fletcher v. Austin,* 11 Vermont, 449, the parties signing the bond directed that it should not be delivered until the other obligors named in the body of the bond should also sign.  It was delivered in violation of this direction.  The court held it no delivery.  In *Sharp v. The United States,* 4 Watts, 21, a suit on a collector's bond, the law required that the bond be executed with two sureties.  Two names appeared on the face; one only signed.  The court held that "he had a right to believe that it was the intention of all the parties that the bond was to be taken in strict conformity with the act of congress," and that therefore his signature was conditional.  In *Bibb v. Read,* 3 Ala., 88, and *Pepper v. The State,* 22 Ind., 399, the names of some sureties were obtained upon condition that others should sign, and then the bonds were delivered without such additional names.  This was held no delivery.  In *McCramer v. Thompson,* 7 Am. Law Reg., N. S., 92, the note was signed by three sureties.  The name of the first was then erased.  In this condition it was delivered to the payee.  The court held that such erasure was sufficient to put him upon inquiry as to whether such erasure was with the consent of the other sureties.  We might pursue this examination further for there are many authorities bearing with more or less directness upon this question.  We are satisfied with the rule as laid down in the instructions above quoted.  It is true, that on application of plaintiff in error the court gave an instruction seemingly inconsistent with the one quoted; but as that was far more favorable to him than this, and as this we have seen is correct, we hardly think him prejudiced thereby.  For if the jury respected this instruction it was all plaintiff in error had a right to ask.  If they respected that it was more.

Third: The court instructed the jury that if Jones made any such condition to his signing as he claimed, he was discharged from liability.  In this the plaintiff does not claim any error, nor indeed could he.

Again it is objected that the court erred in admitting in evidence a chattel mortgage given by Johnson to secure Jones

for going security on this bond. We see no error in this. Again, the defendant Jones, after testifying to all the conversation at the time of signing the bond, was asked this question: "State whether or not you ever dispensed with the execution of this bond by Davis?" Objection to this question was sustained. Afterwards he testified that he never had any other conversation with the sheriff about the matter. As the whole case turned upon the conversations at the time of signing the bond, and as no pretense or claim was made that any subsequent act or word of Jones' affected his liability, we do not see how he was prejudiced by this ruling. The judgment will be affirmed.

All the Justices concurring.