Wolf v. Driggs.

ABRAHAM WOLF

*v.*

ANNA A. DRIGGS.

Where two persons execute a joint and several bond, each has implied authority, arising out of the nature of the transaction, to act for the other, and where one allows the other to take the bond, after both have executed it, his possession of the bond gives him authority to make delivery of it and to receive the consideration from the obligee.

Wolf *v.* Driggs.

'On final hearing on bill and answer and proofs taken orally.

*Mr. Charles W. Kimball,* for complainant.

*Mr. Henry Woodruff,* of New York, and *Mr. Robert Adrain,* for defendant.

VAN FLEET, V. C.

This is a foreclosure suit. The complainant's bill is founded on two mortgages, embracing the same lands, both made by the defendant and her husband (Spencer B. Driggs), now deceased, to Joseph Tilney, the first of which bears date May 20th, 1874, and was given to secure the payment of $7,760, at the end of five years from its date, with interest payable semi-annually; and the second of which bears date March 20th, 1875, and was given to secure the payment of $4,500 at the end of eighteen months from its date, with interest payable semi-annually. The mortgaged premises consist of nearly five hundred acres of marsh lands situate in the county of Bergen. The defendant's husband signed both bonds with the defendant. The complainant obtained title to the mortgages June 9th, 1883, by assignment from the mortgagee. The due execution of the mortgages, and also of the bonds which the mortgages were given to secure, is admitted by the defendant's answer. The defendant, however, says that no

NOTE.—A refunding bond given to the clerk of the court on the dissolution of an injunction, may be delivered by one of the signers in the absence of the others, *Hansard* v. *Bank of Tennessee, 5 Humph. 53.*

If a bond be delivered by one surety thereon to the obligor, *conditionally,* it is not binding unless the condition be performed, *Pawling* v. *United States, 4 Cranch 219; United States* v. *Hammond, 4 Biss. 283; Bibb* v. *Reid, 3 Ala. 88; State* v. *Chrisman, 2 Ind. 126; Wright* v. *Shelby Co., 16 B. Mon. 5; State Bank* v. *Evans, 3 Gr. 155; People* v. *Bostwick, 43 Barb. 9, 32 N. Y. 445; King* v. *Smith, 2 Leigh 157; but see Deardorff* v. *Foresman, 24 Ind. 481; Taylor* v. *Craig, 2 J. J. Marsh. 462; Bank* v. *Curry, 2 Dana 142; Smith* v. *Moberly, 10 B. Mon. 266; Millett* v. *Parker, 2 Metc. (Ky.) 608; Nash* v. *Fugate, 24 Gratt. 202.*

After a delivery to the obligee without notice of the condition, or any circumstance to arouse his suspicion, the instrument cannot be avoided in his hands, *Dair* v. *United States, 16 Wall. 1; Price* v. *Cloud, 6 Ala. 248; State* v. *Pepper, 31 Ind. 76; State* v. *Blair, 32 Ind. 313; Smith* v. *Peoria Co., 59 Ill. 412; Johnson* v. *Weatherwax, 9 Kan. 75; York Co. Ins. Co.* v. *Brooks, 51 Me.*

Wolf *v.* Driggs.

money or other valuable thing was given or delivered on the
execution of the mortgages, but that they were given as security
for money to be advanced by the mortgagee, with the understand-
ing that the same was to be expended in draining the mortgaged
premises, by the erection of dikes and in the construction of
sluices and ditches, but that no part of the sums mentioned in
the mortgages has been so expended, except about $2,500, and
that the amount thus expended has been so expended as to result
in no benefit to her lands. The arrangement between the mort-
gagee and herself, in respect to the purpose for which the first
mortgage was given, is described by the defendant, in her answer,
as follows :

" At the time of signing the same, and before the delivery of the same to
Tilney, this defendant personally informed Tilney that the same was only
executed, and to be delivered to him, for the purpose of securing such advances
as he might thereafter make, * * * for the purpose of diking said lands,
and the mortgage was received by Tilney upon such understanding and agree-
ment."

And with regard to the purpose for which the second mortgage
was executed, the answer says that

" On or about March 20th, 1875, this defendant was informed that the
$7,760, secured by the first mortgage, had not been sufficient to complete the

---

506 ; *State* v. *Peck, 53 Me. 284; State* v. *Potter, 63 Mo. 212; Passumpsic Bank*
v. *Goss, 31 Vt. 315.* But see *Schnewind* v. *Hackett, 54 Ind. 248; Ayres* v. *Milroy,
53 Mo. 516; Lovett* v. *Adams, 3 Wend. 380; Sharp* v. *United States, 4 Watts 21 ;
Perry* v. *Patterson, 5 Humph. 133 ; Fletcher* v. *Austin, 11 Vt. 447.*

As to what amounts to such notice, see *State* v. *Bodley, 7 Blackf. 355 ; Mc-
Cramer* v. *Thompson, 21 Iowa 244; Hall* v. *Parker, 37 Mich. 590; Blume* v.
*Bowman, 2 Ired. 338 ; Wells* v. *Dill, 1 Mart. (N. S.) 592 ; Crockett* v. *Thomason,
5 Sneed 342 ; Ward* v. *Churn, 18 Gratt. 801.*

After the obligee refused to receive a bond from all the obligors, it was held
she could not afterwards receive it from one obligor and assign it, without
another delivery by all the obligors, *Parker* v. *Latham (MS.), 6 Jones 56.*

A bond cannot be delivered to one of several obligees as an escrow, *Moss* v.
*Riddle, 5 Cranch 351.*

*Query.*—Whether a bond given by a grantee to one of several grantors, in
order to defeat the conveyance, if executed contemporaneously with the con-
veyance, amounts to a technical defeasance, *Flagg* v. *Mann, 2 Sumn. 487.*—Rep.

Wolf *v.* Driggs.

-diking and draining of her lands, and that a further sum of $4,500 would be necessary to complete the same, and that Tilney would make further advances, to that amount, for that purpose, and that thereupon this defendant executed the second mortgage for the further sum of $4,500, to be advanced for the completion of said works."

The only defence sought to be made in this case is such as is set forth in the quotations made above from the answer.

The answer, it will be perceived, does not show that the mortgagee was under any duty or obligation whatever to the defendant. So far as appears, he was under no legal obligation to advance a penny on the mortgages; but, if it be true, as is alleged, that they were given for no present consideration, passing at the time of their delivery, but to secure advances to be made in the future, then, of course, until something was advanced, they would be without the support of a consideration, and, consequently, unenforceable. It is not alleged, it will be noticed, that the mortgagee had promised to do the work, necessary to be done, to drain the defendant's lands, nor to do any work on her lands, nor to apply any money, which he should advance on the mortgages, to the payment of debts which the defendant had incurred, or should thereafter incur, in draining her lands, or for any other purpose. No contract of any kind has been proved, by which the mortgagee became bound to the defendant for anything. So far as appears, they never had but a single interview. That occurred, according to the defendant's own evidence, on the day she executed the first bond and mortgage, and very soon after she had put her signature to those papers. She describes what took place at that interview, as follows: She says that, after signing the papers, she left the office of the commissioner before whom the papers had been executed, and went to the office of the mortgagee ; that she found him in his inner office, just opening his safe, and that she said to him :

"'Mr. Tilney, I have just signed a mortgage on those lands;' he said, 'Yes;' I said, 'I want none of that money given to Mr. Driggs—I want it spent on the lands;' he said, 'Of course, of course, Mrs. Driggs; you know it is a mere bagatelle to the value of the land; is there any other mortgage on the land?' I said, 'No other;' there were a few other words, of no importance, passed, or none, as far as I can remember, and I left the office."

Wolf *v.* Driggs.

The mortgagee denies the whole of this conversation. He says that no conversation ever took place between the defendant and himself respecting either of the mortgages, and that the only thing the defendant ever said to him about the mortgages, was said in a letter, which she wrote to him in July, 1874, and which was delivered to him by her husband, together with the first bond and mortgage. The defendant admits that she never spoke to the mortgagee about the second mortgage, but that she executed that without giving any direction how it should be used, or how the money raised on it should be applied, supposing, however, as she says, that the direction which she had given respecting the use of the first would be followed in the use of the second.

From this statement, it would seem to be entirely clear, that when the answer is stripped of its immaterial allegations, or mere gloss, the only substantial defence which it sets up is this : that the mortgages in question were executed to secure advances to be made in the future, and that as only $2,500 have been advanced, the complainant's recovery must be limited to that sum. The defendant, it is true, says that the complainant is not even entitled to that sum, but as no reason is either alleged or proved why the amount which she admits the mortgagee has expended in diking her lands should not be paid, her defence, in this respect, must be regarded as baseless. It appears, however, that the sum which the defendant admits is nearly double the amount actually expended. The mortgagee testifies that the sum which he paid for work done on the defendant's lands, is $1,252.31. The recovery of the complainant, on that account, must be limited to that sum, with interest.

The defendant, by her answer and also by her oath, on her direct examination, said, that no money had ever been paid to her on the mortgages, either directly or indirectly. Her cross-examination, however, proved conclusively that this was a mistake. Checks drawn by the mortgagee to her order, and drafts drawn by her husband, on the mortgagee, in her favor, amounting to over $2,200, running in date from December 19th, 1874, to May 3d, 1875, all of which were paid by the mortgagee at about the time they respectively bear date, were exhibited to her

on her cross-examination, and she thereupon admitted that they
had all been endorsed by her. These moneys must be regarded
as having been paid directly to her. So that the proofs show,.
beyond all doubt, a perfect consideration of over $3,450 for one
or the other of the mortgages.

The case so far seems to be free from the least doubt. The
question which remains for consideration is, Do the proofs show
that the mortgagee made other advances, on the credit of the
mortgages, to the defendant? There is no proof showing that.
any other money was advanced to the defendant in person, but
the mortgagee swears that, in March or April, 1874, the defend-
ant's husband applied to him for a loan, stating that he would
secure its payment by a mortgage on his wife's lands in New
Jersey, and that he subsequently let the defendant's husband
have money from time to time. On the day that the first mort-
gage was executed, the mortgagee sent his counsel to the office·
of the commissioner, where the papers were to be executed, to be
present at their execution. This gentleman was examined as a
witness in this case. He says the defendant exhibited so much
hesitancy in executing the papers that he advised his client not
to accept them. The papers were, however, executed and left
with the commissioner. Subsequently, and on the 13th or 14th
of July, 1874, the bond and mortgage were taken by the defend-
ant's husband to the mortgagee, together with a letter, written
by the defendant to the mortgagee, in which she said :

"In the matter of executing the mortgage to you on my marsh land in Ber-
gen county, New Jersey, on last Monday, the 6th inst., permit me to say, that
the questions I asked of Mr. Nettleton and your son were merely for informa-
tion as to the land &c., of which I was quite ignorant, and not from any dispo-
sition or hesitation as to executing the mortgage. And I hereby inform you
that I executed said mortgage of my own free will, and without any fear or
compulsion from my husband or any other person, and that whatever my
husband, S. B. Driggs, has done, or may do in the premises, I will fully sanc-
tion and confirm."

Without the special authority conferred by this letter, the
bond, as well as the mortgage, having been executed by the
defendant's husband, as well as by the defendant herself, he had

Wolf v. Driggs.

same authority to make delivery, and to receive the consideration, for both, as she had. His liability was the same as hers, and so was his authority. Where two persons execute a joint and several bond, each has implied authority, arising out of the nature of the transaction, to act for the other, and where one allows the other to take the bond after both have executed it, his possession of the bond gives him authority to make delivery of it, and to receive the consideration from the obligee. The proofs show that, at the time of the delivery of the letter and of the bond and mortgage, the mortgagee had already advanced to the defendant's husband $5,025. He subsequently, between the date of the letter (July 13th, 1874), and the date of the execution of the second mortgage (March 20th, 1875), advanced to the defendant herself $605, and to her husband $2,715, making a total, not including the $1,252, of $8,345. This, it will be observed, exceeded by nearly $600 the amount secured by the first mortgage, and made it necessary, if further advances were desired, that a second mortgage should be executed. The mortgagee, after the execution of the second mortgage, and between its date and the 5th of June, 1875, advanced to the defendant herself $1,600, and to her husband $3,019, making a total advanced under both mortgages of $12,619. This, when added to the $1,252, gives a grand total of $14,216.

The proofs show, beyond all question, that the defendant and her husband obtained, by means of the mortgages, over $14,000 of the mortgagee's money. The defendant's husband is dead. He died in January, 1883. It is possible, if he had been alive when this suit was brought, no defence would have been made. That the defendant executed the mortgages voluntarily, fully understanding that she was pledging her lands for the payment of large sums, stands, on her own admission, as an undisputed fact in the case. It is equally certain that she voluntarily allowed her husband to take possession of the bonds and mortgages to make delivery of them to the mortgagee. And this she did, as to the first, accompanied by an assurance, in writing, that she would sanction and confirm all that her husband had done, or should do, in the premises. Her direction to the mortgagee to

24

deal with her husband, as her agent, with full authority to do for
her whatever there was to be done, was as full and explicit as
language could make it. No intimation was ever subsequently
given that this direction had been extorted from her by unfair
means, or that she desired to recall it, or to revoke the authority
of her agent. On the contrary, all her subsequent conduct indi-
cated that she was quite satisfied with the conduct of her agent.
She asked for no information of any kind from the mortgagee.
So far as he could judge, from anything she said or did, he was
justified in believing that she was fully informed respecting all
her agent's transactions, and was entirely satisfied with them.
Before executing the second mortgage, she did not apply to the
mortgagee for information as to whether the whole sum secured
by the first had been advanced or not, and, if it had, how it had
been applied. If it had been true, as she swears, that she
instructed the mortgagee to pay none of the money to be advanced
on the first mortgage to her husband, but to see that the whole
of it was spent on her lands, it is quite incredible that she should
have executed the second mortgage without first having an inter-
view with the mortgagee, or at least requiring a statement from
him showing how the money advanced on the first had been
applied. But she did nothing of the kind. The mortgagee had
nothing to do with the execution of the second mortgage. He
neither suggested it nor solicited it. So far as appears, its execu-
tion proceeded either from her own volition, or the desire of her
husband. She entrusted it, after its execution, to her husband to
make delivery. This new expression of her confidence in her
husband justified the mortgagee in believing that the authority,
which her letter of July 13th, 1874, conferred on him was still
in full force, and that she intended that her husband should in
the future, as he had in the past, have the complete conduct and
control of all transactions between the defendant and himself.

The probabilities are that the defendant knew, at the time
when the advances were made, just what money had been ad-
vanced, and also to what purposes it had been applied. Except
on the theory that she possessed such knowledge, or that she
executed the mortgages to please her husband, intending to allow

Wolf *v.* Driggs.

him to use the money as he pleased, it is impossible to account for her conduct. Although she swears that she executed both mortgages to raise money for a particular purpose, and that, before the delivery of the first, she charged the mortgagee to see to it, that the money advanced under the first one was applied to that purpose, and to no other, yet she does not pretend that she ever, after the execution of either of the mortgages, made the slightest attempt to obtain information from any one as to how much money had been advanced, how it had been applied, or what had been done with the mortgages. It is impossible to reconcile her conduct with her evidence. Her conduct, subsequent to the execution of both mortgages, was just what it would have been if she had had full information respecting all her husband's transactions, as her agent, with the mortgagee, and she was entirely satisfied with what he had done for her. The mortgagee had a right to put this interpretation on her conduct. He had a right to understand, from the fact that she executed the second mortgage without asking him for any information as to what had been done under the first, and that she gave her husband the second to deliver, that she fully approved of all that had been done in the past, and that she meant that her husband should act for her in the future, in the same manner and with the same authority that he had in the past.

The fact, I think, is clearly established that the mortgagee advanced to the defendant, long prior to the assignment of the mortgages, the full sums mentioned in them. The complainant is, therefore, entitled to a decree.